## Denison & Sherman Railway Company v. William L. Randell.

Decided May 17, 1902.

**1.—Damages—Double Recovery—Mental Suffering.**

In an action of damages for an assault a charge authorizing a recovery for
the physical and mental suffering and also the humiliation suffered by plaintiff
was not reversible error as allowing double damages, in that humiliation is one
of the forms of mental suffering, where it fairly appeared from the whole case
that the jury did not allow double damages, the verdict being, in view of the
evidence, not a large one.

**2.—Same—Exemplary Damages—Assault.**

Evidence that defendant's car conductor, upon demanding fare from plaintiff
and receiving a reply that the fare had been already paid, struck plaintiff in
the face repeatedly and kicked him although plaintiff did not attempt to strike
the conductor, warranted a charge on exemplary damages and a recovery there-
for.

**3.—Same—Corporation—Ratification of Agent's Act.**

A corporation is liable in exemplary damages for the act of an agent which it
authorizes, participates in, or ratifies, and where a railway company's manager
was present at the trial and conviction of one of its conductors for an assault
on plaintiff while collecting fares, and paid the conductor's fine, and retained him
in the company's service thereafter, there was a sufficient ratification of the con-
ductor's act in making the assault.

Appeal from the County Court of Grayson. Tried below before Hon.
J. D. Woods.

*Moseley & Smith,* for appellant.

*Wolfe, Hare & Semple,* for appellee.

BOOKHOUT, Associate Justice.—This was a suit instituted by ap-
pellee as plaintiff, against appellant as defendant, to recover damages for
personal injuries. Plaintiff alleged that on August 11, 1901, while he was
a lawful passenger on defendant's street car, his fare having been paid in
cash, he received injuries from a malicious and intentional assault made
upon him without provocation; that defendant ratified said assault, which
plaintiff alleges was made with the deliberate intention on the part of
defendant and its employes to harass, injure, and humiliate plaintiff;
that thereby defendant is liable to the plaintiff in the sum of $800 for
actual damages and in the further sum of $200 for exemplary damages.

Defendant replied by general denial, and specially plead that its em-
ploye, the conductor on said car, truly believing that plaintiff had not

paid his fare for passage on said car, and that on the other hand plaintiff was trying to beat his way, demanded that plaintiff pay his fare or produce an identification check or receipt, which receipt or check was given to plaintiff if he was a lawful passenger and paid his fare, in accordance with the rules of the company, and in accordance with the agreement entered into between defendant and every passenger who pays cash fare for passage from Denison to Sherman on defendant's cars; that plaintiff did receive, and was bound to produce on demand of the defendant's conductor, such receipt or check, if in truth he had paid his fare as is alleged; that plaintiff knew of said agreement, and having failed or refused to produce such check or receipt, was grossly negligent and was guilty of an infraction of said agreement; that defendant's conductor, truly believing that plaintiff was not a lawful passenger on said car, and acting in accordance with his duty, stopped said car and ordered and warned plaintiff to leave the same or be forcibly put off of it; that plaintiff refused to leave the car and resisted the force necessary to put plaintiff off of said car; that plaintiff not only resisted but provoked the necessary force applied by defendant's conductor, and that by plaintiff's infraction of said agreement and by plaintiff's resisting and provoking the necessary force, he invited, contributed and became responsible for the injuries, if any, received by him.

Plaintiff, on October 30, 1901, in the County Court of Grayson County, Texas, recovered judgment for $250, $100 of said judgment being for actual damages and $150 being for exemplary damages. From this judgment defendant has appealed.

*Opinion.*—1. It is contended that the court erred in the following charge: "If you find for the plaintiff you will assess his actual damages by allowing him such a sum, not to exceed $800, which will, as a present payment in cash, fairly and reasonably compensate him for the physical and mental suffering, if any, and the humiliation, if any, he suffered by reason and on account of the assault, if any, committed upon him by said conductor." It is insisted that humiliation being one of the forms of mental suffering, the charge authorized a double recovery therefor. The petition alleged that on account of the injuries he had received, the mental anguish and physical suffering, and the humiliation and impaired standing in the community, he has been damaged $800. We are of the opinion that, from the whole case as made out, it fairly appears that the jury did not allow double damages. The verdict was for $100 actual damages, and is not large in view of the evidence. Railway v. Corley, 87 Texas, 432; Railway v. Gordon, 70 Texas, 89.

2. It is contended that the evidence did not authorize a charge on exemplary damages. We were of the opinion upon our first consideration of this case that this contention was well taken. However, upon a closer examination of all the facts we are of the opinion that we were in error in our former holding, and have, on our own motion, set aside that judgment. The evidence shows that on the 11th of August, 1901, plain-

tiff and a companion took passage on one of defendant's cars at Sherman for the city of Denison. They remained at Denison until about 3 o'clock p. m., when they again boarded one of defendant's cars to return. There are two principal stops between Denison and Sherman,—Woodlake and the Coursing Park. The fare from Denison to these stops is the same —15 cents. The fare from Denison to Sherman is 25 cents. Plaintiff testified that when he and his companion boarded the car in Denison they paid their fare through to Sherman; that it was paid by his companion, Williams, he, plaintiff, having paid the fare for both from Sherman to Denison. In this the plaintiff is supported by the testimony of Williams. When the car reached the Coursing Park it was crowded with passengers returning from the Coursing Park to Sherman. The train consisted of a motor car and a car attached to the motor car and pulled by it, called a trailer. After passing the Coursing Park the appellant's conductor started to take up the tickets and collect fares. He began at the front end of the motor car. The plaintiff and his companion were riding on the rear platform of the motor car. When the conductor reached the plaintiff he demanded his fare. Plaintiff informed him that he and his companion had paid their fare in Denison when they boarded the car. This the conductor denied, insisting that they only paid to the Coursing Park. He then demanded of them the slip known as the passenger's identification check, and which the conductor issues to the passenger when he pays his fare. These were not produced. Williams testified he threw them away under the impression that they were useless, as the plaintiff and the conductor seemed to be well acquainted. The plaintiff testified that he was sitting on the banister around the rear platform with his right arm around the stanchion. He had his feet upon an iron rod running across the platform and dividing the same. He testified: "The conductor came to me and wanted the fare. I said, 'This is three times you have asked me to pay. I paid you in Denison on Main street.' He said he would have the fare or make me get off. I said, 'You won't; I have paid you.' I don't know how he got past the railing. The crowd was so thick I couldn't see whether he crawled over or under. He grabbed me and jerked me off. After I told him we wouldn't pay he said he would throw me off. I says, 'I don't think you will. More than that, you haven't the right to; and more than that, you won't throw me off while the car is in motion.' Some one stopped the car; I don't know who it was; I didn't hear him. The conductor then grabbed hold and jerked my foot off the railing. I told him I didn't want to have any racket. I was positive the fare was paid. Williams says, 'Yes, here is the change.' He seemed to want me to pay. He grabbed me by the collar and hit me half a dozen times in the face. I was at this time sitting on the banisters with my right arm around the up and down piece. I had about a half-smoked cigar in my left hand. There were several ladies on the car. I made no attempt to strike him. I told him I didn't want to have any trouble. He hit me more than half a dozen times. He landed a blow on my lip and bruised it right smart

and hit my nose. Made my nose and lip bleed. Also skinned my leg when he kicked me. He injured no other part of my face except my lip and left eye. About that time an officer took hold of him and said he would have no more of this racket. I suffered as a result of my injuries. In the meantime the motorman came in through the door. He had in his right hand a power lever; they call it a key; that is, the thing they apply the electricity with. He reached over to me and said, 'Let me to him; I'll settle it.' I said, 'There is nothing betwixt you and I.' This was after we had been separated. My best recollection is that the officer and Joe Gunn and several others separated us." Appellee's companion paid the fare for plaintiff and himself from the Coursing Park to Sherman, 30 cents, and no further trouble was had.

The evidence shows that the plaintiff and the conductor were not acquainted and never met prior to this time. It was Sunday and there were many ladies upon the train. The conductor had instructions to put off persons who had not paid their fare. The petition alleged that the conductor assaulted plaintiff without reason and without cause or provocation, and did strike, beat, and bruise plaintiff, inflicting upon him serious and painful injuries about the face, neck, and head. It charged that the assault was wicked and malicious, and was made with the deliberate intention on the part of defendant's employes to harass, injure, and humiliate plaintiff, and was actuated by malice. It is a recognized rule that whenever the injury complained of has been inflicted maliciously or wantonly, and with circumstances of contumely or indignity, the jury are not limited to compensatory damages but may give such exemplary damages as in their opinion are called for by the circumstances of the case. Hays v. Railway, 46 Texas, 272; Barry v. Edmonds, 116 U. S., 550; Railway v. Harris, 122 U. S., 597; Railway v. Anderson, 90 Va., 1, 44 Am. St. Rep., 884. And a corporation, like a natural person, may be held liable in exemplary damages for the act of an agent where the act is authorized, participated in or ratified by the principal. Dillingham v. Russell, 73 Texas, 56; Hays v. Railway, supra; Railway v. Prentice, 147 U. S., 101.

The evidence shows that the conductor was notified by plaintiff and his companion that plaintiff had paid his fare. He did not believe them and started to put plaintiff off. In this attempt he made an unnecessary assault upon plaintiff, striking him several times in the face and causing blood to flow from his nose. His face was scratched and bruised. The evidence was sufficient to authorize the submission of the issue of exemplary damages had the conductor been defendant, and if the assault was authorized by the railroad company, or if it ratified the acts of the conductor, then it became liable. It was shown that the conductor was arrested and prosecuted before a justice of the peace. The attorneys for the railroad appeared and defended him. F. H. Fitch, the general manager for the defendant, was present during the trial and heard the testimony. The conductor was fined and the defendant's manager paid

his fine. The company has retained the conductor in its employ since the assault. The plaintiff set up the above facts in a plea of ratification on the part of the defendant. The court submitted the issue to the jury in a charge to which no objection is made. We are of the opinion that the facts authorized the submission of the issue, and that the evidence is amply sufficient to sustain the verdict in finding that the defendant did ratify the acts of the conductor.

We have carefully considered the assignments of error not discussed and are of the opinion that they are without merit.

The former opinion is withdrawn and the judgment is affirmed.

*Affirmed.*