The Court of Civil Appeals of the Fifth District has certified twenty-five pages of statement from which we extract the following as pertinent to the questions propounded:
"William Turner was struck and killed by the cars of the Houston Texas Central Railroad Company on November 20, 1901. He was a section foreman of appellant and in charge of a gang of men at work in its switch yard in the city of Waxahachie. There were three parallel tracks in the yard a short distance apart running east and west. The north track was known as the passing track; the middle as the main track and the south track as the elevator or mill track. The section men under the control of the deceased, William Turner, were engaged at the time of the accident in repairing or putting in what is called a cut off track between the main track and the passing track on the north side of the main track. The yard crew were engaged in switching and transferring cars from one track to another. While this switching of cars was being done the deceased, Turner, went upon the elevator track, some twenty or fifty feet from where his men were at work, at or near the east end of a flat car which was standing on that track. While in this position the switch crew `shoved' or `kicked' back from the west onto the mill or elevator track some box cars which by the impetus given them by the engine rolled back eastward, struck the flat car, causing it to move suddenly forward against Turner knocking him down and running over him, inflicting injuries upon him from the effects of which he died in a few hours. He left surviving him Mollie Turner, his wife, who brought this suit to recover damages alleged to have been sustained by her on account of her husband's death.
"The defendant pleaded the general issue, contributory negligence and assumed risk on the part of the deceased. From a judgment rendered in appellee's favor for the sum of $5,000 the present appeal is prosecuted." *Page 551 
The court charged the jury as follows: "When a person enters into the employment of another he assumes the risks ordinarily incident to such employment. He does not assume risks arising from the master's negligence; neither does he assume risks arising from the negligence of other employes working in another department of service, unless he knows of these risks. In no event does he assume risks arising from negligent acts of other employes working in a different department of service which are unusual and extraordinary."
"You are further charged that on November 19, 1901, there existed an ordinance of the city of Waxahachie prohibiting the running of trains or cars, within the city limits, at a speed of over six miles an hour, and in this connection you are instructed that if you believe from the evidence that the car or cars kicked in on to the mill siding (if they were so kicked) were caused to run at a speed of over six miles an hour, and were so running at the time the flat car was struck (if it was), and that such speed (if it existed), caused the flat car to run on, against or over William Turner, producing and causing his death, then plaintiff would be entitled to recover, unless you find that William Turner was guilty of contributory negligence as hereinafter charged."
"Upon the issue of assumed risk appellant requested the following charge, which was refused: `In addition to the main charge just given you, you are instructed that if you believe from the evidence Wm. Turner knew, or had reason to believe, that the cars would probably be switched in from the main track upon the track known as the elevator track, and that the usual and customary manner of placing cars on this track was by shoving or kicking them over the switch with a speed at which the cars were then moved, and permitting them to run loose down the track disconnected from the engine, and to stop by force of gravitation without the application of brakes, and without any person on such loose car, or cars, and that he voluntarily went upon the track behind, or in front of the flat car for the purpose of his own personal convenience and not on any business in the line or pursuit of his employment as section foreman, and that he knew the danger to himself by reason of his position when injured, and that he voluntarily assumed that position at a time when his presence at the point of danger was not required by his employers, then under such circumstances, if you find they exist, the said Turner assumed the risk of injury and plaintiff would not be entitled to recover.'
"Appellant also requested the trial court to charge the jury as follows, which was refused: `In addition to the main charge already given and read to you, you are instructed that if, under the circumstances existing at the time and place of the injury to Wm. Turner, the employes of the defendant operating the switch engine did not see Turner and did not expect, or anticipate his presence there, at the place where he was struck, and the bell of the engine was being rung at the time, then the defendant's servants owed the said Turner no further duty of keeping a lookout to discover and protect him from danger; and under such circumstances, if they exist, he received the injury, the defendant would not be liable in this suit.'
"Appellant requested the court to charge the jury in addition to the *Page 552 
main charge as follows: `If from the evidence you believe that Wm. Turner saw the cars which were at the time being shoved or kicked in upon the elevator track, approaching toward the flat car, which was standing on the track, and that to avoid the danger of the impact of the moving cars with the flat car, he stepped from the track to a place where he would have been safe, but that he stepped upon loose dirt, which caused his foot to slip, thereby causing him to fall, and that his slipping and falling was the cause of his being caught under the wheels of the car and injured, then no recovery can be had against the defendant, and your verdict should be in defendant's favor.'
"Question 1. Did the trial court, under the evidence, err in restricting and confining, by its charge to the jury, the issue of assumed risk on the part of the deceased, Turner, to such risks and dangers of which he had actual knowledge?
"Question 2. Did the court err in refusing to give in charge to the jury appellant's requested charge on the issue of assumed risk quoted above?
"Question 3. Did the court err in refusing to give appellant's above quoted instruction, to the effect, that if, under the circumstances existing at the time and place of the injury to William Turner, the employes of appellant operating the switch engine did not see Turner and did not expect or anticipate his presence there, then appellant's servants owed Turner no duty of keeping a lookout to discover and protect him from danger, and under such circumstances, if they existed, appellant would not be liable in this suit? In other words, if Turner voluntarily went near or upon the elevator track near the end of the flat car and where injured, to urinate or for some other purpose personal to himself, and not in discharge of some duty imposed by his employment and appellant's employes switching cars which caused his death did not see him and could not have anticipated his presence there, was it the duty of said servants to keep a lookout for him; or was it only the duty of said employes in such case, to use the means at their command to avoid injuring him after his peril was actually discovered?
"Question 4. Were the members of the switching crew relieved from the duty of using ordinary care to discover Turner upon the elevator track by reason of the fact that he went there to perform a duty personal to himself?
"Question 5. In view of the evidence, did the court err in the twelfth paragraph of its charge in instructing the jury that `if the car or cars kicked in onto the mill siding were caused to run at a speed of over six miles an hour, and were so running at the time the flat car was struck and that such speed caused the flat car to run over the deceased, Turner, producing his death, plaintiff would be entitled to recover, unless Turner was guilty of contributory negligence?' In other words, was the issue submitted in this charge raised by the evidence? If so, was the issue of assumed risk raised in connection therewith and said charge erroneous in that it ignored such issue?
"Question 6. If in the switching of the cars in the Waxahachie yards they were propelled at a greater rate of speed than six miles per hour, in violation of an ordinance of that city, and it was usual and customary *Page 553 
to move said cars at such greater rate of speed in the performance of the work and the deceased knew those facts or must have acquired knowledge of them in the discharge of his duties did said William Turner, under such circumstances, assume the risks incident to the moving of said cars at such a rate of speed and appellant would not be liable for an injury resulting to him by reason of negligence consisting of a violation of said ordinance?
"Question 7. Did the trial court err in refusing to give appellant's special charge quoted, upon the theory of unavoidable accident, based upon the evidence that deceased Turner in attempting to get out of the way of the flat car stepped upon some loose dirt which caused his foot to slip and his body to fall under the car?"
To questions 1, 2, 5 and 6, we make the following answer: The issue of assumed risk was not raised by the evidence, because, (1) there was no evidence that tended to prove that prior to the accident the railroad employes had habitually sent the cars on the side track at a speed greater than six miles per hour; (2) the deceased was not connected with the work of switching the cars in the yard, therefore he did not assume the risk of injury from the negligent method by which other employes of the railroad company did the switching. The proposition contended for by the railroad company is, that if its employes were habitually negligent in the manner of handling the cars and Turner knew the fact, he assumed the risk of injury from such negligence. As a general rule the employe does not assume the risk of dangers growing out of the employer's negligence, or the negligence of those for whom the master is responsible, however habitual it may be. To this rule there are exceptions, but the facts do not bring this case within any one of them. Grace v. Kennedy, 99 Fed. Rep., 679; Schroeder v. Chicago A. Ry. Co., 108 Mo., 322; Caron v. Boston A. Ry. Co., 164 Mass. 523; Hosic v. Chicago, R.I. P. Ry. Co., 75 Iowa 683; s.c. 9 Am. State Rep., 518; Peck v. Peck, 12 Texas Ct. Rep., 784; Seley v. Southern Pacific Co., 6 Utah 319; Texas P. Ry. Co. v. Archibald, 170 U.S. 665; Hamilton v. Des Moines Valley Ry. Co., 36 Iowa 31.
In the case of Texas Pacific Railway Co. v. Archibald, before cited, the facts were, briefly: the plaintiff was a brakeman in the employ of the Texas Pacific Railway Company at Shreveport, Louisiana, which company habitually received from the Cotton Belt Railway Company, without inspecting them, cars to be handled in the yard of the Texas Pacific Company. In the course of his employment the plaintiff undertook to uncouple two oil tank cars, received from the Cotton Belt Railroad, then standing in the yard of the Texas Pacific Company, and, on account of a defect in the coupling of the cars, he was injured. To his claim for damages the railroad company pleaded that he had assumed the risk of injury from such cause because of the fact that it habitually received such cars without inspection. In disposing of the question the Supreme Court of the United States said: "Indeed, the ultimate result of the argument of the plaintiff in error is to entirely absolve the employer from the duty of endeavoring to supply safe appliances, since it subjects an employe to all risks arising from unsafe *Page 554 
ones, if the business be carried on by the employer without reasonable care, and the employe knew or by diligence would have known, not of the dangers incident to the business, but of the harm possibly to result from the employer's neglectful methods. Measured by the principles just stated the trial court not only did not err in striking out parts of the instructions which were asked, but in the portions given stated the law to the jury more favorably to the plaintiff in error than was sanctioned by true legal principles."
In the case of Hamilton v. Railway Company, before cited, the facts were: the railroad company was in the habit of loading its lumber cars so that the timbers would project beyond the car; this was proved to have been the common method of loading the lumber cars. One of its employes was injured while attempting to couple a car so loaded, being caught between the engine and a projecting piece of timber. The railroad company contended that because its cars were loaded in the usual manner, although negligently done, the employe assumed the risk of such negligence, and asked the court to instruct the jury as follows: "If the car of timber which hurt the plaintiff was loaded as loads of timber had been usually and commonly loaded and carried over defendants' and all other railroads, then it was not negligence in defendant to carry the timber upon which plaintiff was hurt." The instruction was refused, and, disposing of the assigned error, that court said: "The instruction was properly refused for the obvious reason that habits of negligence on the part of defendant or other railroads, will not relieve them from the consequence of their negligent acts. It can hardly be insisted that, if one is `usually and commonly' negligent, he will escape liability for his acts, and that the usual and common delinquencies of others will have the effect to excuse him. If, because an act is usual and common, it ceases to be negligent, it follows that the sure way of escaping liability for injuries to persons and property, in cases of this character, would be to adopt a certain and uniform system of common negligence."
The above quotations so thoroughly discuss the propositions and answer the contention of the appellant in this case that it is unnecessary to give additional reasons in support of our answer.
To the 3d and 4th questions we reply: Turner was not a trespasser because he moved away from the place where he was at work to urinate. It is not shown that any convenient place was provided. It was the duty of the employes who were handling and switching the cars on the side track to use ordinary care to protect any person who might be lawfully upon the yards. Turner was an employe and lawfully at the place in returning to his work. There were no facts connected with the case which relieved the railroad employes of the duty to use ordinary care in handling the cars for the protection of such persons as might be in Turner's situation. They owed no special duty to Turner himself, but he was entitled to the protection due to any person who might be lawfully at that place.
To the 5th question we make the following answer: The evidence introduced raised the issue that the car which caused the injury was being propelled at a speed greater than six miles per hour. Spring, the *Page 555 
only witness who saw Turner when he was struck, testified that when the car that was sent in on the side track struck the standing car the end of the latter car flew up off the track and came down with the trucks on the ties and, by the force of the blow, was driven fifteen or twenty feet on the ties although the brakes were set on the flat car. Two witnesses who testified that they had long experience in these matters swore that such effect could not be produced except by a very great force; one of the witnesses saying, that it would require a terrific force. Other witnesses testified that no other car in that yard had ever been thrown from the track in such manner before. This evidence was amply sufficient to raise the question of excessive speed of the car.
To the 7th question we answer: The trial court did not err in refusing the charge referred to in the question. There was no evidence that Turner was in a place of safety when his foot slipped upon the loose dirt. His own declarations, which is the only evidence on the subject, was that he was then upon the railroad track and endeavoring to get off the track.