GALVESTON, HARRISBURG & SAN ANTONIO RAILWAY COMPANY v. ALFRED H. HANSEN.

Decided January 19, 1910.

**1.—Question of Law or Fact—Test.**

The test of whether the evidence raises an issue of fact is whether reasonable minds may reach different conclusions from the testimony. If there can be no such difference of conclusion, the question is one of law for the court to decide; but if there may be such difference, there is an issue of fact for the jury to determine. Where the jury determines an issue of fact under appropriate instructions the appellate court will not revise their finding unless it be manifest that the verdict is clearly against the preponderance of the testimony.

**2.—Practice—Insufficient Evidence—Peremptory Instruction.**

A party is not estopped from basing a motion for new trial upon the insufficiency of the evidence to support the verdict, by the fact that he neglected to ask a peremptory charge in his favor on that ground, nor by the fact that he asks special charges embodying his view of the law on issues which the court submits in its main charge.

**3.—Master and Servant—Assumed Risk—Burden of Proof.**

The doctrine of assumed risk is wholly dependent upon the servant's knowledge actual or constructive of the dangers incident to his employment. When he knows or in the exercise of ordinary care should know the risks to which he is exposed he will as a rule be held to have assumed them; but where he does not know, or knowing does not appreciate, such risks, and his ignorance or nonappreciation is not due to negligence or want of due care on his part, there is no assumption of risk on the part of the servant preventing a recovery for his injuries. The burden of proof on the issue of assumed risk is on the defendant.

**4.—Same.**

In order to charge a servant with assumption of risk, he must not only know but he must appreciate the danger to which he is exposed, and one does not voluntarily assume a risk who merely knows there is some danger without appreciating it. A danger may, however, be so obvious that a servant can not help understanding it fully.

**5.—Same.**

If a servant has a general knowledge of defects in the appliances with which he is working, sufficient to charge him with knowledge of danger, he assumes the risk, although he may not know of the particular defects which caused the injury; and when he is injured by a known risk of the employment assumed by him, it is immaterial that he did not know the precise extent or character of the injury liable to be sustained.

**6.—Same.**

To warrant a finding that a servant assumed the risk of his employment, he need not have absolute knowledge of the risks if they be such that an ordinarily prudent man under the circumstances could by reasonable diligence have discovered them.

**7.—Same—Disabled Cars.**

Where the very work which a servant is employed to do is of such a nature that its progress is constantly changing its conditions as regards an increase or diminution of safety, the hazards arising as the work proceeds are regarded as being the ordinary dangers of the employment, and by his acceptance of the employment the servant necessarily assumes them. This principle applies to the handling of defective cars or rolling stock set apart for repairs.

**8.—Same—Case Stated.**

In a suit by a switchman against a railroad company for damages for personal injuries caused by stepping into a hole in the floor of a disabled car which the crew of which plaintiff was a member was engaged in switching from a side track to the repair shop, evidence upon the issues of assumed risk and contributory negligence reviewed, and held (1) to raise issues of fact and not of law, and said issues were therefore properly submitted to the jury; and (2) said evidence was sufficient to support a finding of the jury to the effect that the plaintiff did not assume the risk which caused his injury, and that he was not guilty of contributory negligence; and (3) that defendant was guilty of negligence which proximately caused plaintiff's injury.

**9.—Assumed Risk—Contributory Negligence—Distinction.**

If assumption of risk is the issue, knowledge of defective conditions and acquiescence therein are fatal to plaintiff's case. If contributory negligence is the issue, knowledge of defective conditions and acquiescence therein may be fatal or may be not, dependent upon whether a person of ordinary prudence, under all the circumstances, would have done what the injured person did. If the risk is not so great and immediately threatening but that a person of ordinary prudence, under all the circumstances, would take it, contributory negligence is not established.

**10.—Personal Injuries—Quantum of Damages.**

In suits for damages for personal injuries, the quantum of damages is primarily for the jury to determine, and an appellate court is without authority to disturb their finding unless the amount found, in view of the evidence, is so great as to shock the conscience by rendering it morally certain that the jury was actuated by some improper motive.

Appeal from the District Court of Bexar County. Tried below before Hon. Edward Dwyer.

*Baker, Botts, Parker & Garwood, D. C. Bolinger* and *W. F. Ezell,* for appellant.

*Perry J. Lewis* and *H. C. Carter,* for appellee.

NEILL, ASSOCIATE JUSTICE.—This is an action brought by the

appellee against the appellant to recover damages in the sum of $40,000 for personal injuries alleged to have been inflicted by the negligence of the company. Plaintiff alleged that his injuries occurred on November 10, 1907, while in the employ of defendant in its yards in San Antonio as a switchman and in the discharge of the duty of his employment, by stepping in a hole or rotten and defective place in the floor or platform of a car which defendant had negligently permitted to become and remain in such defective condition. The defendant answered by a general denial, and pleas of assumed risk, and contributory negligence. The trial of the case resulted in a verdict and judgment in favor of the plaintiff in the sum of $20,000.

The appellant has presented in its brief five assignments of error. All complain of the court's overruling its amended motion for a new trial: The first, on the ground that the evidence conclusively shows that plaintiff had full knowledge that the car on which he was injured, on account of defects therein, was defective, out of service and had to be repaired before again put in service, and in acting as switchman with such knowledge he assumed all risk of injury from such defect; the second, for the reason that on account of the facts and circumstances surrounding him at the time of the movement of the car, he had knowledge or was put on notice of such defects in it, and was, considering his situation and knowledge, guilty of contributory negligence in stepping in the hole therein which was the cause of his injuries; the third, upon the ground that the undisputed proof fails to show that defendant, its agents or servants were guilty of any negligence causing plaintiff's injuries; and the fourth and fifth, upon the grounds that the verdict is outrageously excessive, because the undisputed evidence shows that the plaintiff did not receive any such fall or concussion as could have produced any serious bodily injury, and that the great preponderance of the testimony showed that no serious or permanent injury resulted on account of his stepping into the hole, and when considered in connection with the trivial, insignificant and superficial injury which he received, the verdict is outrageously excessive and out of proportion to the injuries received by him, and shows upon its face the jury was actuated by improper motives and prejudice against the appellant.

Before proceeding to a discussion of the questions presented by the assignments, we will observe that they are all of fact, which, if there be any evidence raising such questions or issues, should be submitted to the determination of the jury. The test of whether the evidence produces such an issue is whether reasonable minds may reach different conclusions from the testimony. Unless there can be no such difference of conclusion, the question is one of law for the court to decide; but if there may be such difference, there is an issue of fact for the jury to determine. If there be such issue of fact, when it is submitted to and decided by the jury upon an appropriate charge, it is not the province of an Appellate Court to revise such finding unless it be manifest that the verdict is clearly against the preponderance of the testimony.

It will be noted that from the principle stated, if the contention of appellant under them is correct, there was no issue of fact on

either the issue of assumed risk, contributory negligence, or negligence of the defendant, to go to the jury, but that such matters were of law to be decided by the court. Such a decision would have pretermitted the questions raised by the other two assignments; for if plaintiff's injuries resulted either from an assumed risk, contributory negligence, or defendant was not guilty of negligence as a matter of law, he could not recover damages whatever may have been the extent of the injuries he sustained. If, then, the matters involved in the first three assignments were of law, rather than of fact, the court should have decided them by peremptorily instructing a verdict for the defendant. Inasmuch as this was not done, nor such an instruction requested by defendant, but special instructions requested by defendant submitting such matters as of fact to the jury, it is insisted by plaintiff's counsel that, if any error, such as is now insisted upon, existed, it was invited by the defendant and it is precluded from taking advantage of it on appeal.

While it may be the better practice, if the defendant deems there is no evidence to carry a case to a jury on an essential issue, for him to request a peremptory charge in his favor, yet we are not prepared to hold that if he fails to make such request and asks a special charge embodying his view of the law upon such issue, especially when the court has in its general charge (as was done in this case), submitted such issues, he is estopped from urging in a motion for a new trial that there was no evidence tending to prove such essential facts, or of predicating error upon the action of the court in overruling his motion on such grounds. A mistaken view of counsel as to whether an essential issue is one of law or of fact, upon which eminent lawyers and judges so often widely differ, ought to be regarded by courts everywhere and under any and all circumstances, as the parent of injustice, through whom iniquity may flow under the shadow of the law and thwart the main purpose for which government is instituted among men and maintained by the people. Suppose that the indisputable evidence should clearly show as a matter of law, as it is contended by the defendant in this case, either that it was guilty of no negligence, or that plaintiff's injuries resulted from a risk assumed by him or that he was guilty of contributory negligence, a fundamental error in the judgment in plaintiff's favor would be apparent; for it is a cardinal principal that every valid judgment must involve the existence of every fact essential to its existence, and that such facts must appear from the verdict or, in the absence of a jury, from the findings of the court, and not from a pure fiction arising from the action of counsel upon the trial, induced by a doubt as to whether a question is one of law or of fact. If, then, the defendant were precluded from showing that there was no evidence to support the finding of negligence, or that the undisputed evidence showed conclusively such defensive facts as would defeat plaintiff's action, we would have a judgment fundamentally erroneous, with the hands of justice so fettered by a mere fiction that they could not be extended to prevent judicial robbery.

With these preliminary observations, we will pass to a consideration of the questions raised by the assignments.

1. Does it conclusively appear from the evidence that plaintiff's injuries resulted from a risk assumed by him as incident to his employment? It will be observed that under the decisions of the courts in this State, it is not incumbent upon the plaintiff to prove the negative of this issue, but that the burden is upon the defendant to prove its affirmative. (International & G. N. Ry. v. Harris, 95 Texas, 346; Bonn v. G., H. & S. A. Ry. Co., 82 S. W., 808; Texas Mex. Ry. Co. v. Higgins, 44 Texas Civ. App., 523, 99 S. W., 202.) "The doctrine of assumed risk is wholly dependent upon the servant's knowledge, actual or constructive, of the dangers incident to his employment. Where he knows, or in the exercise of ordinary care should know, the risks to which he is exposed, he will as a rule be held to have assumed them; but where he does not know, or knowing does not appreciate, such risks, and his ignorance or nonappreciation is not due to negligence or want of due care on his part, there is no assumption of risk on the part of the servant preventing a recovery for his injuries." 26 Cyc., 1196; Missouri, K. & T. Ry. Co. v. Hannig, 91 Texas, 347; Hynson v. St. Louis S. W. Ry., 39 Texas Civ. App., 48 (86 S. W., 928); Peck v. Peck, 99 Texas, 10; Sherman v. T. & N. O. Ry. Co., 99 Texas, 571; Houston & T. C. Ry. v. Turner, 99 Texas, 547; Galveston, H. & S. A. Ry. v. Berry, 47 Texas Civ. App., 327 (105 S. W., 1022); Texas & N. O. R. R. Co. v. Jackson, 113 S. W., 628; Texas Mex. Ry. v. Higgins, 44 Texas Civ. App., 523 (99 S. W., 200).

As corollaries to the rule above enunciated, it is stated by the authority from which it is quoted, that "In order to charge a servant with assumption of risk, he must not only know, but he must appreciate the danger to which he is exposed, and one does not voluntarily assume a risk who merely knows there is some danger without appreciating it. Thus the mere knowledge of defects in the appliances or places of work or of other negligence on the part of the master, without knowledge and appreciation of the danger occasioned thereby, will not defeat a recovery, unless the danger is so obvious that the servant can not help understanding it fully. If, however, the servant has a general knowledge of defects sufficient to charge him with knowledge of danger, he assumes the risk, although he may not know of the particular defects which caused the injury; and when he was injured by a known risk of the employment assumed by him, it is immaterial that he did not know the precise extent or character of the injury liable to be sustained."

"To warrant a finding that a servant assumed the risk of his employment, he need not have absolute knowledge of the risks if they were such that an ordinarily prudent man under the circumstances could by reasonable diligence have discovered them."

From the principles enunciated arises the rule that where the very work which the servant is employed to do is of such a nature that its progress is constantly changing the conditions as regards an increase or diminution of safety, the hazards arising as the work proceeds are regarded as being the ordinary dangers of the employment, and by his acceptance of the employment the servant necessarily assumes them. This principle is generally applied to the enhanced

risk created by the defective condition of rolling stock which is set apart to be taken to the repair shops by the trainmen. (Labatt's Master and Servant, sec. 269, and cases cited in note (e) on page 616.)

Having thus stated the law as we best understand it applicable to a case of this kind, we will now in view of it review the evidence and determine the question presented by the first assignment.

The substance of the plaintiff's testimony on this issue is, that he was in the employ of the defendant company as a switchman in its yards at San Antonio on November 10, 1907, and that his duties were to throw switches, couple cars, cut off and set brakes and perform whatever other duties he was instructed to do by his engine foreman, who was R. B. Vallee; that the crew consisted of the engineer, fireman, foreman and three other switchmen; that the instructions of the crew from the foreman on that night were to go down to the old yard towards old No. 7 (a sidetrack of that number), and when they got there the foreman started down the cars that were standing on the lead track towards old No. 7; and that he, plaintiff, went behind him looking at the brakes and making couplings, when the foreman gave a signal to go ahead, and they proceeded to pull eastward; that he (plaintiff) boarded the car next to the last one, which was an oil tank car, for the purpose of riding to where the switching was to be done; that in getting on he got on the south side of the car, and then walked over to its north side in order to ascertain whether there was any room on the other tracks which they were pulling by, it being his duty to know the condition of the yard if possible; that while on that side he turned to walk back to the south side and his foot went down in the hole in the car and threw him back with great violence. . . . That he knew nothing of the defective place in the car at the time he fell into the hole; that he knew nothing in regard to the car being in bad order; that he knew nothing more about what he was doing than that he was coupling up that string of cars; that he did not know what the crew was going to do with the cars; that he didn't know that old No. 7 was used for putting in cars when inspected and marked B/O (a car so marked means that it is in bad order); that he didn't know that they, nor the oil car, were bad order cars; that when the crew started out that night he did not know where it was going to commence switching, nor did he know when the string of cars were taken up by the engine what was going to be done with them; that he didn't know where he was going to throw the switch until he was told, and that he wasn't told ahead of time; that it was not a fact that a switch crew going out to do certain work in the yards, that each member of the crew has knowledge of what work it has to do, but that nobody knows anything about it except the foreman, unless he tells them, and it is not a fact that the foreman always tells. The plaintiff being asked if old No. 7 track wasn't one on which bad order cars were placed after they had been inspected in order to be taken by the switch crew, of which he was a member, he answered: "Not to my knowledge. No, sir, it was not one of them. The different tracks were used for all purposes, except 1 and 2; they were the

tracks on which cars were put for repairs, and were known as 'rip tracks' 1 and 2." He was then asked this question: "But No. 7, you have answered, was not used to put bad order cars on. Do you say that?" He answered: "They may have put them down there the same as anywhere else, if they had room to do so. I do not know that it was used at all times for that. No, sir, I did not know it was used for that; I can't say positively that they had bad order cars on that track."

We here quote from the record this further testimony of the plaintiff:

"At that time the yards were in a congested condition and those tracks were used for whatever purpose the foreman of the engine saw fit. They didn't have any room to set the tracks aside for any special class of cars with the exception of the two rip tracks. The other tracks were used for anything, any kind of cars.

"I knew the two rip tracks were there, and were used to put defective cars on; I had put them on there; I think possibly I had done that work the night before, I did that work every night I worked there, and I knew the cars we put on the rip tracks were found on other tracks, any place in the yard, on all tracks; that was part of the work I did there and I did it every night, but at that time I didn't know I was going to do that work; I thought we were going to do some switching; when I got on this car I got on the south side and I did not see in chalk marked on the car B/O; it might have been marked bad order but I didn't see it; I had my lantern, it is to give signals with, and to see also; I didn't carry it to look for holes or anything like that, I carried it about to do my work; it was a dark night. The lantern may have been intended to give me light to see by, as well as other things, but it was to perform our work by, to see what we were doing if we carried it with us; I carried it in my hand; if I had looked and had my lamp up possibly I could have seen whether that car was marked or not; I didn't pay any attention to that."

The plaintiff was then asked the following questions and gave the following answers:

"Q. You knew there were bad order cars, you were handling them? But you didn't look to see whether that was one or not?

"A. No, sir; and it didn't make any difference even if it was marked bad order, because it would not inform me that that platform or any part of the car was defective."

Being asked how do they mark it, said: "B/O in chalk. I have seen a good many marked that way; I had worked in the night-time and although I have seen a good many marked that way, I didn't see this one; I might have looked and didn't see it, and might not, I wouldn't say positively.

"Q. I want to know the fact.

"A. I don't know. There are times we can look at the cars pulling by and can't tell anything about it. Some are marked in red chalk, and after a rain it becomes very dim, and at that time the cars had staid in the yard two or three months before we got word for their disposition—they might have been marked and it become so dim

from the rain that I couldn't see it when passing, but I would not say that I looked and didn't see it, or that it was marked bad order and didn't see it. I may have looked, or might not. . I don't think I did look.

"Q. It would not make any difference to you if you had known it, is that your answer?

"A. It would have been my duty to get on just the same."

Being asked whether it was a bad order car or not, and if it had been a bad order car it would have made no difference, said: "I would have gotten on to get to go to where the work was to be done. When a car is marked bad order, we know that there is something wrong, but it does not tell us to keep off of them; when we see a car marked bad order it signifies that there is some defect; we don't know what the defect is; it does not signify and we don't know what it is that is defective, although they could do it. I did not know anything about these cars as to whether they had been inspected or not. They may have been put in there and not marked or inspected. When they did inspect the cars and mark them 'bad order' they would be put on some of the tracks, and they would bunch them anywhere, if they could do so; I never said that was the place for them, they were liable to put bad order cars in there the same as on any other track; I knew that. I said I didn't know whether I looked at that car or not, and if I had I might not have seen the hole."

We have thus stated from the record what we take to be the substance of the plaintiff's testimony upon the question under consideration; and we do not think that we have omitted anything that he testified to upon this issue that would make it more favorable to him.

When his own testimony, as shown by the statement, is viewed in the light of the law above enunciated, we would incline to the opinion that it conclusively shows that his injuries were caused by a risk assumed by him as incident to his employment, were it not that, taking his testimony as true, it appears therefrom he did not know that the string of cars, including the one on which he was injured, had been set aside as disabled to be taken to the repair tracks for repair, and that he was unaware of the fact that they were being carried there by his crew for that purpose. From our statement of the law applicable to the case, it will be observed that knowledge, either actual or constructive, of the facts, conditions or circumstances creating it, is the *sine qua non* to assumed risk. Though, from the testimony of other witnesses, if plaintiff's be disregarded, it may appear that he had actual as well as constructive knowledge of the defective condition of the car which caused his injuries, we do not believe, in view of his own testimony, which, in the face of the verdict we can not ignore, that the evidence clearly shows that he had actual knowledge or that the duties of his employment, when considered in the light of the circumstances under which he endeavored to discharge them on the night his injuries were sustained, charged him with knowledge of the defect. It is only upon the principle that a switchman assumes the enhanced risks created by a defective condition of rolling stock which is set apart to be taken to the repair

shops by the trainmen, that plaintiff, in view of the evidence, can be charged with knowledge of the risk. While it may be that the evidence of the other members of the crew is such as would have warranted the jury in finding that the car was marked disabled and set apart by the defendant to be taken to its repair tracks or shops for repair, yet this evidence is not such as would authorize a court to make such findings as matters of law. The car, if on old No. 7, was not on a track appropriated exclusively for the purpose of placing disabled cars which were to be taken to the shops for repairs, but was upon a track where such cars were sometimes placed for that purpose; if it was on the lead track, as the evidence may indicate, it was upon one which was principally used in handling trains which were received thereon and the cars distributed therefrom. In either event, plaintiff was not charged with such notice as would show as a matter of law that he assumed the risk of the defect in the car. (Chicago, M. & St. P. R. R. Co. v. Voelker, 65 C. C. A., 226, 129 Fed Rep., 522.)

The question presented by the assignment not being one involving the preponderance of the evidence upon the issue of assumed risk, but as to whether the evidence conclusively shows that he assumed the risk of the danger, we have deemed it only necessary to state the plaintiff's own testimony upon the issue in order to decide it; for if his testimony was believed, it was sufficient to warrant the jury in finding that the defendant had failed to prove the affirmative of such issue. That this was the finding of the jury is manifest from the verdict, and we can not say it conclusively appears from the evidence that such finding is clearly against the evidence.

In the case of Texas Mexican Ry. Co. v. Higgins, 44 Texas Civ. App., 523 (99 S. W., 202), in which it was contended by the defendant that deceased assumed the risk of going between cars, one of which was marked "bad order," where he knew there was an open frog, to uncouple them, it was said:

"The risk assumed by a servant as incident to his employment precludes negligence of the master which adds to or augments the risk, unless such negligence and the superadded danger incident thereto were known to the employe, or he had such facts in mind as charged him with such knowledge. He has the right to presume and act upon the presumption that his master will exercise ordinary care in the conduct of his business to prevent anything from being done which will increase the danger incident to his employment. If the master fails in the discharge of this duty, and in consequence the servant is injured by reason of the risk superadded to that which he assumes as incident to his employment, the master must answer for such consequence." In view of this, should we find when we come to consider the third assignment that defendant was guilty of negligence proximately causing plaintiff's injuries, it may be said that plaintiff never assumed the risk of defendant's negligence unless he had, or was charged with, knowledge of it, and anticipated the danger accruing therefrom. But passing the question of defendant's negligence for the present, without regard to it, we are of the opinion that the question evolved from the assignment should be answered in the negative.

2. Did plaintiff, by reason of the facts and circumstances surrounding him at the time of the car's movement, have knowledge or was he put upon notice of such defects in it as would render him guilty of contributory negligence in stepping in the hole in the car? The only proposition asserted under the assignment which presents this question is to the effect that it conclusively appears from the evidence that it should be answered in the affirmative.

Here it may be well to note the practical distinction between the defenses, which are separate and distinct, of assumed risk and contributory negligence. Such distinction is this: If assumption of risk is the issue, knowledge of defective conditions and acquiescence therein are fatal to the plaintiff's case. If contributory negligence is the issue, knowledge of defective conditions and acquiescence therein may be fatal or may not be, dependent upon whether a person of ordinary prudence, under all the circumstances, would have done what the injured person did. If the risk is not so great and immediately threatening but that a person of ordinary prudence, under all the circumstances, would take it, contributory negligence is not established. (St. Louis & S. F. Ry. Co. v. Mathis, 101 Texas, 342; Southern P. Co. v. Allen, 48 Texas Civ. App., 66 (106 S. W., 441); St. Louis Cordage Co. v. Miller, 61 C. C. A., 477, 126 Fed. Rep., 495; Davis Coal Co. v. Pollard, 158 Ind., 607, 92 Am. St. Rep., 319, 62 N. E., 492; Rase v. Minn., St. Paul & Ste. Marie Ry. Co., 120 N. W., 360.)

Putting aside, as determined by our disposition of the first assignment, the question of assumed risk, we have now to determine whether it conclusively appears from the evidence that a person of ordinary prudence, engaged in the discharge of the duties of a switchman, would not have, under all the attending facts and circumstances, got upon the car and stepped in the hole therein as plaintiff did when he was injured. This is, as has been seen, primarily a question of fact for the jury, and it having been decided, it is not within our province to disturb the verdict unless under the evidence it can be said that no other reasonable minds could have reached the same conclusion. There is evidence, which we need not reiterate, tending to show that, in the discharge of his employment, plaintiff's duty required him to be upon the car at the time he was injured; that he neither knew nor was charged with knowledge of its damaged or defective condition. Having no such knowledge, he was not charged with the duty of inspection, but had the right to assume that defendant had discharged its duty in exercising ordinary care to furnish him a reasonably safe place to perform the duties of his employment. Not being, by any fact or circumstance, put on his guard against the danger from a defect of which he knew nothing, the jury were warranted in finding from the evidence that a man of ordinary prudence under the same or like circumstances would not have discovered the defect until he was injured in consequence of it. We, therefore, find in consonance with the verdict, that the evidence does not show plaintiff was guilty of contributory negligence as a matter of law, and overrule the second assignment of error.

3. Does the evidence wholly fail to disclose any evidence of negligence on the part of the defendant? A special charge, given at the request of defendant's counsel, states the negligence as alleged by plaintiff, thus: "The negligence relied on by the plaintiff in this case, is that defendant negligently failed to furnish to plaintiff a safe place to work or a reasonably safe car on which to discharge his duty, and that if defendant had knowledge of the defective condition of said car, it failed to notify plaintiff of the defective condition of said car, and on this account plaintiff was injured." The undisputed evidence shows that the car was defective as alleged and that it was in the string of cars that was being switched. The plaintiff's testimony is to the effect that he was on it as the proper place in the discharge of his duty, and that other members of the switching crew were on it at the same time and for the same purpose. The defendant had knowledge, or was charged with knowledge, of its defective condition, and it was its duty to plaintiff, in view of the work he was put there to do, to in some way impart to him this knowledge before it became necessary for him to go upon it to discharge his duties. It is claimed by the defendant that this duty was discharged by indicating that it was in bad order by marking it B/O. The evidence as to whether this duty was discharged in the manner claimed or in any other way, is such as to warrant a finding of the jury against such contention; and that the plaintiff neither knew, nor was charged with knowledge of its defective condition. We conclude that this evidence is reasonably sufficient to show the negligence charged against the defendant and that such negligence was the proximate cause of defendant's injuries. Therefore, we overrule the third assignment of error.

4. Now, as to the question as to the excessiveness of the verdict. The quantum of damages in cases of this character is primarily for the jury to determine; and where damages for personal injuries are shown, unless the amount found, when reckoned by the evidence, is so great as to shock the conscience by rendering it morally certain that the jury was actuated by corruption, prejudice or some other improper motive, an Appellate Court is without authority to disturb the verdict.

As has been seen from our statement of the case, the verdict is for $20,000. This is large; but it may not be out of proportion to the damages he has sustained. Taking the view of the evidence most favorable to the verdict, as we are required by the law to do, the injuries he sustained were serious and permanent, causing great physical pain and mental suffering; besides wholly destroying his earning capacity and rendering him a helpless sufferer for life. We can not, in face of the verdict, accept defendant's theory of the evidence; but are bound by the plaintiff's, and what the jury has found it proves the plaintiff has been damaged; for it does not appear that the jury was actuated by any improper motive in assessing the damages or that they are manifestly disproportionate to the injuries inflicted and suffering sustained. The judgment is affirmed.

*Affirmed.*

Writ of error refused.