TEXAS ELECTRIC RY. v. WHITMORE.
(No. 6174.)

(Court of Civil Appeals of Texas.  Austin.
April 14, 1920.  Rehearing Denied
May 19, 1920.)

**I. Damages. ☞54—Mental suffering from disfigurement element of damages for personal injuries.**

Where plaintiff in a personal injury action brought against a street railroad company alleged that he brooded over the fact that his body had been scarred and disfigured, and that he became depressed and suffered great mental and physical pain as a result of such disfiguration and the loss of the use of his arm, such mental suffering might be considered by the jury in estimating damages.

**2. Appeal and error ☞1060(1)—Argument of counsel in personal injury case that defendant's attorneys were superior held not reversible error.**

In a personal injury action against a street railroad company, argument of plaintiff's counsel that the case was an unequal contest because of the superior skill and ability of defendant's counsel, and that defendant had a paid claim agent and paid general attorneys, whereas plaintiff was lacking in these facilities, while irrelevant and perhaps improper, held not reversible error.

**3. Street railroads ☞117(10)—Negligence in failure to keep lookout held question for jury.**

In an action for injuries to a soldier in a collision between defendant's street car and a truck with a trailer, evidence as to the failure

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

of the motorman to keep a proper lookout *held* sufficient to justify the submission of such issue to the jury.

**4. Street railroads ⊙117(34)—Whether failure to sound warning was proximate cause of injuries held for jury.**

In an action for injuries to a soldier in a collision between defendant's street car and the trailer of a truck crossing the track, whether the motorman's failure to sound warning was the proximate cause of the injuries *held* for the jury.

**5. Street railroads ⊙117(34)—Whether speed of car was proximate cause of injuries in collision held for jury.**

Whether the speed of defendant's car was the proximate cause of injuries in a collision with a truck crossing the track *held*, under the evidence, for the jury.

**6. Street railroads ⊙117(10)—Whether motorman saw stop signal by companions of person injured held for jury.**

Whether or not defendant's motorman saw a signal to stop given by members of crew on an army truck, struck while crossing the track, *held* for the jury.

**7. Street railroads ⊙114(2)—Evidence held to show that defendant owned street car.**

Evidence *held* to justify a finding that defendant was the owner of the tracks upon which the collision occurred, so as to warrant an inference that the street car belonged to defendant.

**8. Appeal and error ⊙930(1), 1004(1)—Verdict will not be disturbed unless manifestly excessive in the view most favorable to plaintiff.**

A verdict will not be disturbed on appeal unless it is manifestly excessive, and the appellate court is required to take the evidence in the view most favorable to the party recovering the damages.

**9. Damages ⊙132(8)—$15,000 held not excessive in action for injuries in street car accident.**

$15,000 damages *held* not excessive in an action by a soldier, 22 years old, for personal injuries sustained in street car collision, where it appeared that plaintiff's left arm and shoulder were disabled, that he had suffered great pain, that the injuries were permanent, that terrible scars were left, and that his usefulness as an expert mechanic was virtually destroyed.

Appeal from District Court, McLennan County; H. M. Richey, Judge.

Action by Don H. Whitmore against the Texas Electric Railway to recover for personal injuries. Judgment for plaintiff, and defendant appeals. Affirmed.

Templeton, Beall, Williams & Calloway, of Dallas, and Sanford & Harris, of Waco, for appellant.

Alva Bryan and W. E. Terrell, both of Waco, for appellee.

BRADY, J. This is a suit by appellee against appellant for damages for personal injuries, alleged to have been received by appellee from a collision between a street car, alleged to have been owned and operated by appellant, and an army truck and trailer on which was loaded a wrecked airplane; appellee being on the trailer at the time of the accident. It was averred that appellee was a soldier in the mechanical branch of the aviation section of the United States army, and, in company with other soldiers, was carrying the wrecked airplane on an army truck to the camp. The accident occurred between Eighth and Ninth streets on Austin avenue, in the city of Waco; the trailer being struck by the street car while crossing the track.

Appellant answered by demurrers, general denial, and a plea of contributory negligence. The case was submitted to the jury upon a general charge, embracing the following issues of negligence: (a) The alleged failure of the motorman to keep a proper lookout. (b) The failure of the motorman to sound the gong, ring the bell, or blow the whistle on the street car. (c) The operation of the street car, at the time and place of the collision, at a high and dangerous rate of speed. (d) The failure of the motorman to stop the car and avert the collision after having seen a signal given by members of the truck crew, who had gotten off the truck or trailer onto the street. The jury returned a verdict for the plaintiff for $15,000, and judgment was rendered accordingly.

There is evidence to support a finding as to each of the grounds of negligence submitted by the court in the main charge. The pertinent facts as to the questions presented in the assignments discussed in the opinion will be there stated.

### Opinion.

The first assignment of error complains of the action of the trial court in overruling a special exception to a portion of appellee's petition, alleging:

"That he broods over the fact that his body has been scarred and disfigured, and as a result thereof is depressed and suffers great mental and physical pain as a result of said disfiguration and the loss of the use of said arm."

The point is specifically made that mental anguish suffered by an injured person by reason of the fact that he broods over a scarred and disfigured body is too remote to be the subject of compensation. In appellant's brief the following testimony by appellee on this point is quoted:

"Before I was injured I was always proud of the fact that I had good-looking arms and shoulders for a young fellow, but now I have a big old bone sticking up there and a big old scar there. I participated in athletics and swam all summer long, and it does not look very

good now. I always feel like I do not want anybody to see it. It is an ugly looking place. Feel like I will always have to keep it hid."

Appellant, as authority for the proposition that mental anguish of such a character is too remote, cites the case of Railway v. Dickens, 54 Tex. Civ. App. 637, 118 S. W. 612, a decision by this court. Appellant specially relies upon this statement in the opinion by Chief Justice Fisher:

" * * * Anguish of the mind, wholly sentimental, arising from the contemplation of a disfigurement of the person, cannot be considered for the purpose of swelling the damage. * * * The law regards supposed injuries to sentimental feelings of this character as too remote and speculative to allow it as an element of damages in cases where no malice exists."

The statement just quoted was made by Chief Justice Fisher in connection with an argument of counsel, and does not seem to us to be applicable to the question raised in the instant case. The cases cited in support of the doctrine seem to recognize that mental anguish, when the natural or reasonable result of the injuries sustained, is a basis for the recovery of damages, and they condemn only the allowance of damages for mental anguish wholly sentimental.

The following authorities sustain the proposition that mental suffering, which an injured person experiences as the result of contrasting his injured condition with his previous state, may be considered by the jury in estimating damages for such injuries. M., K. & T. Ry. Co. v. Miller, 29 Tex. Civ. App. 460, 61 S. W. 978; Western Union Tel. Co. v. Simmons, 32 Tex. Civ. App. 578, 75 S. W. 822; St. Louis S. W. Ry. Co. v. Cleland, 50 Tex. Civ. App. 499, 110 S. W. 126; Decatur Cotton Seed Oil Co. v. Belew, 178 S. W. 612; Chicago, R. I. & G. R. Co. v. Smith, 197 S. W. 614; Townes on Torts, p. 162.

[1] The facts in the above cases, touching mental suffering, differ only in degree from those of the instant case, and we think announce the doctrine prevailing in this state. Therefore we hold that it was not reversible error for the trial court to overrule the special exception involved in this assignment.

The second point presented in appellant's brief is the failure of the trial court to instruct the jury not to consider a certain portion of the argument of counsel for appellee. This argument related to the statement of counsel, in substance, that the case was an unequal contest, because of the superior skill and ability of appellant's counsel, and the fact that appellant had a paid claim agent and paid general attorneys, whereas appellee was lacking in these facilities or advantages.

[2] We have carefully considered the argument in question, and while we think it was irrelevant and in the main perhaps improper, we are persuaded that it was not calculated to influence or prejudice the jury against appellant, and that it did not have such effect. We do not think it presents reversible error, and the assignment is overruled.

[3] The next assignments complain of the submission of the several grounds of negligence to the jury, because there was no evidence supporting any of these issues. With this contention we cannot agree. As to the first issue, it is sufficient to say that there was evidence that the motorman was standing on the front of the street car, at and before the time of the accident, and after the trailer was struck and the street car had stopped the motorman stated, "I will open the door," and he did open it, and he stated to some of the occupants of the truck and trailer that he did not see them. There was testimony that there was no obstruction between the street car and the trailer at the time and just before the accident, and nothing to prevent the motorman seeing the same had he been keeping a proper lookout. There was testimony tending to show that the motorman was looking ahead, but the conflict was sufficient to raise the issue and to take it to the jury. The motorman did not testify, and the jury were entitled to consider all the circumstances as well as the statement of the motorman above referred to.

[4] As to the second issue, the failure of the motorman to sound the gong, ring the bell, or blow the whistle on the street car, it is claimed that there was no evidence to show that such failure, if any, had any causal connection with the injuries received by appellee. While the testimony was conflicting, there was evidence that neither the bell, gong, nor whistle was sounded after the street car left Eighth street, and that the truck and trailer passed over the track from 25 to 75 feet ahead of the street car, and that the appellee had his back turned to the street car and did not see it. There was also evidence to the effect that when appellee first saw the car it was right on him, and he had no opportunity to extricate himself from danger. Under these circumstances, we think it was for the jury to say whether or not the failure to sound the warning was a proximate cause of the injuries.

[5] As to the issue of operating the car at a high and dangerous rate of speed, there was evidence that the street car was being run at a rate of speed at least 18 miles an hour, and that its speed was not slowed down before striking the trailer. The accident was on one of the principal streets of the city. As the truck had passed safely over the track and the street car struck only the trailer, it was manifestly a question for the jury, under these circumstances, to determine whether the speed of the car was a proxi-

mate cause of the injury, and had a direct connection with the injuries.

[6] With reference to the remaining ground of negligence submitted, the failure of the motorman to heed the signal given by members of the truck crew, the evidence was conflicting as to whether the motorman saw the signal. There was evidence that he was looking straight ahead in crossing Ninth street, and that the accident was just past Ninth street, and that just before the accident occurred one of the men on the right-hand side of the truck jumped off and flagged the street car. There is no direct proof that the motorman saw the signal. He did not testify, but in view of the fact that it was a bright, sunshiny day, that there were no obstructions between the street car and truck and trailer, that the front end of the car, where the motorman was standing, was practically all glass, and the facts above recited, it was a question for the jury to say whether or not the motorman saw the signal. If he did see it in time to have stopped or sufficiently lessened the speed of the car to avert the injury, the causal connection is plain.

The next question which will be discussed is the claim that it was not shown by competent evidence that the street car which collided with the trailer was owned, operated, or controlled by appellant, and that therefore the record evidence does not connect appellant with the accident, and no legal liability has been shown. It was not specially pleaded or claimed by appellant that it did not own the street railway, or the street car in question, nor that the motorman operating the same was an employé of appellant, although these facts were peculiarly within the knowledge of appellant. It was shown that the motorman took the names and addresses of passengers on the car, and that the claim agent of appellant procured statements from these passengers and procured the personal attendance of some of them at the trial.

Appellant itself offered in evidence the following question and answer of the witness W. E. Yates:

"At the time the front end of the truck passed on the track of the defendant company just prior to the accident, did you or not at said time notice where the street car was at said time? If you say that you did, where was the street car at the time in question? State if the street car you now mention is the same street car that hit the truck or trailer on which plaintiff was riding. A. I noticed that the street car was on the east side of Eighth street at the time the front end of the truck passed on the track of defendant company just prior to the accident, and this was the same street car that hit the trailer."

[7] There was other testimony, not necessary to recite, from which the jury might reasonably have inferred that the street car belonged to appellant, and that the motorman and conductor thereon were employés of the company. The interrogatory and answer just quoted is, in the circumstances of this case, sufficient proof that the appellant was the owner of the tracks upon which the accident occurred, and brings this case within the rule stated by the Supreme Court in Railway Co. v. Miller, 98 Tex. 270, 83 S. W. 182, wherein it is said:

"It is a sound proposition, often applied, that the corporation, shown to be the owner of a railroad, in the operation of which a wrong has been done, is presumed to be in the possession and operation of its road."

. This case is also affected by the rule stated by the court in Bank v. Mill Co., 207 S. W. 400, as follows:

"The force of evidence, though slight, is greatly increased by the failure of the opposite party to rebut it, where it is obvious that the means to do so are readily accessible to the party."

See, also, El Paso Electric Railway Co. v. Terrazas, 208 S. W. 387; Railway Co. v. Scholz, 209 S. W. 225.

We conclude that the evidence was sufficient to take this issue to the jury, and there was no error of the trial court in relation to the same. The assignments raising this question will be overruled.

[8] The remaining question to be discussed is the claim that the verdict was excessive, and that the case should be reversed for this reason. It is now settled law in this state that a verdict will not be disturbed upon appeal, unless it is manifestly excessive; and in deference to the verdict the appellate court is required to take the evidence in the view most favorable to the party recovering the damages. Burnett v. Anderson, 207 S. W. 540; El Paso Electric Ry. Co. v. Allen, 208 S. W. 739; Decatur Cotton Oil Co. v. Belew, 178 S. W. 607; G., H. & S. A. Ry. v. Hansen, 58 Tex. Civ. App. 584, 125 S. W. 63; T. & P. Ry. v. Williams, 196 S. W. 230; K. C., M. & O. Ry. v. Durrett, 187 S. W. 427; Batson-Milholme Co. v. Faulk, 209 S. W. 837; G., H. & S. A. Ry. v. Butts, 209 S. W. 419; G., H. & S. A. Ry. v. Still, 45 Tex. Civ. App. 169, 100 S. W. 176; Witte v. Railway Co. (Sup.) 6 S. W. 618; Cent. R. Co. v. Fisher, 18 Tex. Civ. App. 78, 43 S. W. 584; 4 Corpus Juris, p. 869 et seq; G., C. & S. F. Ry. v. Harriett, 80 Tex. 73, 15 S. W. 556.

[9] We have carefully examined the evidence in the record as to the nature and extent of appellee's injuries and as to his pecuniary loss, and while the verdict seems large, we cannot say that it is unreasonably so, nor that we are authorized to conclude that it was the result of passion, prejudice, or other improper influence. It was shown that appellee was a young man, about 22 years of age, of strong and robust health prior to the accident; that as the result of

the neglience of appellant's employés he was injured by some character of instrument, which has never been determined, entering his body under his left armpit and coming out at the base of the neck and above his left shoulder; that his left shoulder blade was cracked, and that the muscles, tissues, blood vessels, flesh, and everything, from the point of entrance to the point of exit of the instrument causing the wound, were destroyed. He suffered great pain, not only in the hospital and during the operations, but for months afterwards. He suffered great loss of blood, and a part of the pectoral muscle which controls the arm was destroyed, and the blood supply to that part of his arm permanently lost. There was evidence that his injuries were permanent, and appellee exhibited his injured body to the jury, which showed terrible scars under his armpit and a gaping wound on his left shoulder and at the base of his neck. It was shown that he has no use of his arm in a forward movement, which seemed to be of great value, if not indispensable, in the business for which he had qualified himself—that of an expert mechanic. There was also testimony that appellee's eyes were affected by the accident, and that his hair turned gray, although it seemed to have resumed its natural color at the time of the trial.

Appellee had an education above that of the average mechanic, including a four-year public school course, and a two-year course in forestry at the Kansas University; that prior to entering the army he had worked in a bank at Witchita, Kan., drawing a salary at the rate of $1,600 a year. At the time of his injury he was drawing $44 per month, with the rank of chauffeur in the army. There was testimony that he had diligently applied himself to become an expert mechanic, and expected to follow that avocation upon leaving the army. There was evidence that as an expert mechanic appellee might reasonably expect to earn as much as $160 per month, and that his usefulness in this business was virtually destroyed, and his ability to earn anything in other occupations greatly impaired and lessened because of the permanent injury to his arm.

Considering the long life expectancy of appellee, his mental and physical sufferings, the nature and probable permanency of his injuries, and his lost earning ability, we do not feel justified in either reversing the case for the alleged excessiveness of the verdict, or in ordering a remittur. The assignments complaining of the size of the verdict are each overruled.

The only other assignment in the brief complains that the trial court should have granted a new trial, because the great preponderance of the evidence shows that the collision was due to the negligence of the driver of the truck, and that this was the proximate cause of the injury. We do not deem it necessary to discuss this contention, which we do not regard as supported by the record.

Having concluded that there is no reversible error shown, the judgment will be affirmed.

Affirmed.