TEXAS & N. O. R. CO. v. CUNNINGHAM et al. (No. 6605.) †

(Court of Civil Appeals of Texas. Galveston. May 19, 1914. Rehearing Denied June 25, 1914.)

1. RAILROADS (§ 350*)—ACCIDENT AT CROSSING—QUESTION FOR JURY—SIGNALS.

On evidence in an action for the death of one killed by a train on defendant's crossing, *held*, that the question whether a warning was given by ringing of a bell and blowing a whistle in such a way as was reasonably calculated to apprise a man of ordinary prudence of the approach of the train was for the jury.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1152–1192; Dec. Dig. § 350.*]

2. RAILROADS (§ 350*)—ACCIDENT AT CROSSING—QUESTION FOR JURY—EXCESSIVE SPEED.

On evidence in such action, *held*, that the question whether the speed of defendant's train was too great under the circumstances was for the jury.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1152–1192; Dec. Dig. § 350.*]

3. RAILROADS (§ 350*)—ACCIDENT AT CROSSING—QUESTION FOR JURY—FAILURE TO MAINTAIN WATCHMAN.

On evidence in such action, *held*, that the question whether defendant in the exercise of ordinary care was required to station a flag-man at the crossing, especially when backing its trains over it, to warn persons about to use the crossing, was for the jury.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1152–1192; Dec. Dig. § 350.*]

4. RAILROADS (§ 350*)—ACCIDENT AT CROSSING—QUESTION FOR JURY—CONTRIBUTORY NEGLIGENCE.

On evidence in such action, *held*, that the question of plaintiff's contributory negligence was for the jury.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1152–1192; Dec. Dig. § 350.*]

5. APPEAL AND ERROR (§ 999*)—REVIEW—CONCLUSIVENESS OF FINDINGS.

Where the Court of Civil Appeals could not say that deceased killed at a crossing was guilty of contributory negligence as a matter of law, the finding of the jury that he was free from such negligence was conclusive on the court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3912–3921, 3923, 3924; Dec. Dig. § 999.*]

6. RAILROADS (§ 351*)—ACTION FOR INJURY—INSTRUCTIONS—CONTRIBUTORY NEGLIGENCE.

In an action for the death of one killed by defendant's train at a crossing, where the court submitted the issues of defendant's negligence in failing to warn of the approach of the train, in running at an excessive speed, and in failing to keep a flagman at the crossing, an instruction that, if the signals given were reasonably calculated to warn persons about to use the crossing, and if by listening deceased would have heard them in time to have avoided collision, or if by looking he could have avoided collision, and he failed to do so, he was guilty of contributory negligence defeating a recovery, was not objectionable, as requiring the jury to acquit defendant of having failed to give such signals as were reasonably calculated to warn persons using the crossing of the approach of its train, before they could find contributory negligence on the part of deceased, so as to put a greater burden upon defendant; since the effect of the charges was to direct that, even if defendant was negligent in those respects, there could be no recovery if deceased was guilty of contributory negligence in failing to look or listen as he approached the crossing.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1193–1211, 1213–1215; Dec. Dig. § 351.*]

7. RAILROADS (§ 351*)—ACTION FOR INJURY—INSTRUCTIONS—CONTRIBUTORY NEGLIGENCE.

In such action the refusal of an instruction that, if deceased could have ascertained the approach of the train in time to have avoided collision by stopping and listening, he was guilty of contributory negligence and could not recover, was error.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1193–1211, 1213–1215; Dec. Dig. § 351.*]

8. TRIAL (§ 260*)—INSTRUCTIONS—HARMLESS ERROR—CONTRIBUTORY NEGLIGENCE.

The refusal to give such instruction was harmless, where the court had submitted the issue of defendant's negligence in failing to give warning of the approach of the train, in running at an excessive speed, and in failing to keep a flagman at the crossing, in effect telling the jury that, although defendant was negligent in those respects, plaintiff could not recover if deceased was guilty of contributory negligence in failing to look and listen as he approached the crossing.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

† Application for writ of error pending in Supreme Court.

**9. DEATH (§ 99\*)—EXCESSIVE DAMAGES.**

Where deceased, killed at defendant's crossing, was only a little past 24 years of age, 6 feet in height, weighing 165 or 170 pounds, in good health, was well educated, energetic, and a good husband, and for two years' service had been paid over $5,000, was worth $2,500 per year as a real estate salesman, and the lowest estimate of his earnings was $150 per month, *held*, in the absence of anything to show that the jury was influenced by passion, prejudice, or other improper motives, that a verdict of $10,-000 to the widow and the same amount to each of the two minor children was not excessive.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 125–130; Dec. Dig. § 99.\*]

Appeal from District Court, Jefferson County; John M. Conley, Judge.

Action by Jessie P. Cunningham and others against the Texas & New Orleans Railroad Company. Judgment for plaintiffs, and defendant appeals. Affirmed.

Baker, Botts, Parker & Garwood, of Houston, and Hightower, Orgain & Butler, of Beaumont, for appellant. W. O. Davis, of Gainesville, R. E. Thomason, of El Paso, Smith, Crawford & Mead, of Beaumont, and Robert T. Neill, of El Paso, for appellees.

McMEANS, J. Mrs. Jessie P. Cunningham and her two minor children brought this suit against the Texas & New Orleans Railroad Company to recover damages for the death of John P. Cunningham, the husband of Mrs. Cunningham and the father of the minors, alleged to have been occasioned by the negligence of the railroad company. Plaintiffs alleged that on the 18th day of March, 1912, defendant owned certain railroad tracks in the city of Port Arthur, and that its main track and numerous side tracks crossed Eighth street and other streets in said city, which Eighth street was alleged to be a public crossing, and used generally as such by the public; and that on said date defendant's side tracks between Eighth street and its passenger depot, alleged to be two blocks east of Eighth street, were blocked with freight and other cars, some of them extending into Eighth street; and that the view of said crossing towards defendant's passenger depot was obstructed and obscured by the standing cars and defendant's freight depot, so that one using the crossing over said track could not see or know of the approach of a train from that direction; and that John P. Cunningham, the husband and father of plaintiffs, while traveling along said Eighth street in a wagon in a southwesterly direction, with due care attempted to cross defendant's track, and, while attempting to cross said track, defendant's passenger train, which was backing from its passenger depot in a northwesterly direction along one of its tracks at a rapid and dangerous rate of speed, struck the wagon which John P. Cunningham was driving, and threw him from the said wagon, under the wheels of the cars, which passed over him, killing him

instantly. The grounds of negligence charged against the defendant, in so far as the same were submitted to the jury in the charge, were: (1) That defendant's employés were guilty of negligence in not blowing such whistles or giving such other signals at the rear of said train as would apprise persons of the approach of said train in time for them to avoid a collision therewith. (2) That the defendant and its employés were guilty of negligence in running said train at that point in view of the existing conditions, at a great rate of speed. (3) By reason of the fixed obstruction constituted by defendant's freight depot and the obstructions then existing by way of freight cars being located on the side track so as to obstruct the view, and the fact that there were numerous tracks of defendant crossing said Eighth street, and the frequent use of the place by the defendant and the public, that defendant was guilty of negligence in not keeping a watchman at said crossing to warn the public in passing of the approach of trains. Defendant answered by general and special exceptions, and by a special plea of contributory negligence, alleging that the deceased attempted to cross the railway track, at the time in question, immediately in front of appellant's train, without first having taken any precaution to avoid a collision with said train, and that on the occasion in question he failed to use due and proper care for his own safety and protection while approaching and attempting to cross the track, and without having first ascertained or attempted to ascertain the presence of defendant's train at said crossing or its approach thereto. The case was tried before a jury and resulted in a verdict and judgment for plaintiffs for $30,000, of which $10,000 was apportioned to Mrs. Cunningham and a like amount to each of said minors. From this judgment the defendant has appealed.

By its first assignment of error appellant complains of the action of the court in refusing to give to the jury its first special charge, which was a peremptory instruction to return a verdict in its favor.

By its several propositions under the first assignment appellant contends: (1) That the evidence was insufficient to raise the issue as to whether or not the defendant was negligent in not giving sufficient signals of warning of the approach of the train to the Eighth street crossing; (2) that the evidence did not raise the issue of its negligence in respect of the speed of the train when it reached the crossing; (3) that the evidence did not raise the question of negligence of defendant in failing to have a flagman at the crossing, sufficiently to require the submission of that question to the jury; and (4) that the undisputed evidence shows that deceased was guilty of contributory negligence as a matter of law.

---

The undisputed evidence in this case is that the deceased, John P. Cunningham, was killed by being run over by one of appellant's passenger trains while he was attempting to cross appellant's railroad track, while traveling along Eighth street in the city of Port Arthur; that the train was running backward at the time and consisted of two coaches, a baggage car, tender, and engine; that Eighth street ran in a northerly and southerly direction, and the railroad track at the place of the injury ran in an easterly and westerly direction; that Seventh street is the next street east of Eighth; that Sixth is the next street east of Seventh, both running parallel with Eighth, and these streets are about 300 feet apart; that appellant's passenger depot is north of its railroad track and is between Sixth and Seventh streets, nearer the Sixth street line; that its freight depot is also on the north side of the railroad track and is between Seventh and Eighth streets, nearer the Seventh street line; that there is a switch track on the north side of the main track which runs from the freight depot parallel with the main track, crossing Eighth street and continuing west. This switch track is about 11 feet from the main track. There was also another switch track north of the one mentioned above running parallel with it across Eighth street and about 40 or 50 feet north of the other switch track above mentioned.

The undisputed evidence shows: That at the time Cunningham was killed there was a string of box cars on the side track nearest the main line above mentioned, which cars extended from Eighth street to the freight depot east and extended from Eighth street west for some distance, leaving an opening at the Eighth street crossing of some 23 feet. That there was also a string of box cars standing on the northernmost switch track on both sides of Eighth street, leaving an opening at Eighth street a little wider than the opening through the string of cars on the other switch track. That the string of cars on the switch track nearest the main line east of Eighth street extended to the freight depot. That the freight depot was a large, two-story structure, and beyond this, across Seventh street, was the passenger station. That across the main line of the railroad track from the freight depot is a hotel building, and west of this an outhouse. The passenger train which collided with Cunningham's wagon, a little while before the collision, had passed across Eighth street with the engine in front and stopped near the passenger station, and was backing out from the passenger station at the time of the collision, and that the train was usually operated in this manner. That the deceased, Cunningham, was driving a team of mules hitched to an ordinary farm wagon and was traveling south on Eighth street. There was no bed on the wagon, and he was sitting on the running gear, or rather on the hounds of the wagon. The wagon had a long coupling pole, it being used for hauling lumber.

It was undisputed that one sitting on the running gear of a wagon, approaching the main track, as Cunningham was, could not see down the main line of the railroad track until he emerged between the box cars that were on the switch track nearest the main line; and that the box cars on this switch track and the freight depot east of them would completely hide cars that might be approaching from the east on the main line. It was further undisputed that Cunningham's team and the front part of the wagon had crossed the main track before the collision, and that the rear passenger car struck the hind part of the wagon, catching and killing Cunningham.

Deceased was traveling in a southerly direction. After he crossed the first, or northernmost, switch track, and just before reaching the second, he spoke to the witness Root in salutation. His team was then going at a fast walk. After that he appeared to be looking ahead and continued to so look until he reached and passed the string of cars on the switch track nearest the main track. These tracks are about 11 feet apart. The proof shows that the distance from where deceased was sitting on the wagon to the heads of his mules was about 14 feet, so that at the time he passed the string of cars sufficiently far to see a train coming on the main line from the direction of the depot his mules of necessity must have been passing over the main track. As before shown, the evidence leaves little doubt that the mules and the front of the wagon had crossed the track when the collision occurred. Just after he saluted the witness Root, deceased struck his team to move them up. Root testified:

"His position on the wagon indicated to me that he didn't think about the train down there coming. In fact, it was past train time. I say it was past train time. I am relying on Mr. Stoneburner's watch when he said it was 8:05. That train is due to leave about 7:55. He said it was late. I was going by his watch."

The engineer testified that the train was moving out on its schedule time.

While the train was standing at the depot, the locomotive was about two blocks or 600 feet distant from the Eighth street crossing. When the train started backing, the locomotive whistle was blown, and the brakeman, who had stationed himself at the rear end of the rear coach, sounded a warning for the Seventh street crossing by giving four blasts of the air whistle located at the rear end of the car. The air whistle was not again sounded until the rear coach had reached a point 130 to 150 feet from the Eighth street crossing, where four blasts were again given. It was not sounded again until the brakeman observed deceased's mules upon the track only some 8 or 10 feet distant, but that warning was not in time to prevent the collision. It was also shown that the locomotive bell was rung by the fireman from the time the

train started to back until the collision occurred. Testimony to the effect that these signals were not given is of a negative nature, the witness testifying thereto simply saying that they did not hear or did not notice them. It is undisputed that the defendant maintained no flagman at the Eighth street crossing at the time of the accident and never had.

Eighth street was a public street in Port Arthur, a city of about 12,000 inhabitants, and the crossing in question was one generally used by the public, although said street and said crossing were not as much used as the streets nearer the business part of the city. Some time prior to the death of Cunningham, the city of Port Arthur had authorized the defendant railroad company to close the street at its railway crossing, but the defendant had never closed the same against traffic by any permanent barricade, but only at intervals when cars would be temporarily standing across the street. At all other times, and especially at the time Cunningham was killed, it was to all intents and purposes a public street and used as such by the general public. It was graded and shelled across the tracks, and planking was laid on the track to give it an even surface with the grade of the street.

As to the rate of speed of the train at the time of the collision, the witnesses are not in exact accord. One of them testified that it was going "a little fast," without attempting to give the rate per hour; another that it was going about its usual rate; another that it was "not going pretty fast"; while the witness Booth, the fireman, said its speed was between four and six miles per hour; and Monahan, the engineer, testified that it was five or six miles per hour, and not faster. The evidence shows that a train such as the one in question, traveling at a speed of five or six miles per hour, could be stopped within 12 or 15 feet. It was shown that the emergency brake was applied when the rear coach was within 8 or 10 feet of Cunningham, and that the train proceeded a distance of about 15 or 18 feet west of the crossing after Cunningham was struck.

We think the testimony was sufficient to take the case to the jury. While it is true that the locomotive whistle was sounded before the train started to back, it was then about 600 feet from the crossing and the rear car was more than 300 feet distant. The deceased was approaching the crossing, his team going in a fast walk, and at the time the whistle sounded he also must have been some considerable distance from the crossing. The engine bell was being sounded, but this was at the front and not the rear end, at which the danger from collision might be anticipated. Railway v. O'Connell, 43 S. W. 66. The air whistle at the rear end of the rear coach was blown when the train first started to back, but this blast was for the Seventh street crossing; but, as before shown, this was more than 300 feet from Eighth street. It was not blown again until the rear coach was within about 120 to 150 feet, and not thereafter in time to warn Cunningham, who all this time was approaching the track; his vision obscured by standing cars projecting into the street on the switch track, which was only about 11 feet from the track on which the cars were approaching, and by structures close to the track.

[1] We think these facts justified the court in submitting to the jury the issue whether the warning by ringing of the bell and blowing the whistles was given in such a manner as was reasonably calculated to apprise a man of ordinary prudence about to use the crossing of the approach of the train. It was for the jury to say under the facts whether ordinary care upon the part of the defendant, considering the situation of the crossing, and of the blocked track that obscured the vision of one approaching did not require the air whistle signal to be sounded continuously after the train was set in motion, or at more frequent intervals.

[2] It was also a question for the jury to say whether the speed of the train was too great under the circumstances. Four to six miles per hour seems to us an ordinarily slow and safe rate of speed, but the jury might reasonably have concluded that the speed was greater than that testified to by the engineer and fireman, in view of the fact that the evidence shows that this train could have been stopped in 12 to 15 feet if going only six miles per hour, by application of the emergency brake, and in view of the further facts that the emergency brake was applied when the end of the car was within 8 or 10 feet of the deceased and the train ran 15 to 18 feet after it collided with him.

[3] The jury also might have concluded that, on account of the manner in which defendant's various tracks at the crossing were obstructed, the fact that the vision of one approaching the crossing was obscured by the cars and adjacent structures, the frequency of use of the crossing, and the unusual hazard of using the same, as shown by the proof, required of the defendant, in the exercise of ordinary care, to station a flagman at the crossing, especially at such times as it knew it was about to back its train thereover, to warn persons about to use the same, and that a failure to so station a flagman or watchman was actionable negligence. Railway v. Magee, 92 Tex. 619, 50 S. W. 1013.

[4, 5] The evidence justified the submission of the issue of the contributory negligence of the deceased, and the finding of the jury in favor of plaintiffs upon that issue is conclusive upon us. Certainly we cannot say that under the facts of this case the deceased was guilty of contributory negligence as a matter of law. The assignment is overruled.

Many assignments of error are presented by appellant relating to alleged errors in the

charge of the court and of the refusal of the court to give special charges requested. We have carefully examined all these assignments, and are of the opinion that none of them points out reversible error, and will omit a discussion of all of them except the eleventh and twenty-first.

[6] The eleventh assignment complains of the ninth paragraph of the court's general charge, which is as follows:

"Now if you shall believe that when the train approached the crossing the bell was rung or the whistle was blown at such time and place as was reasonably calculated to warn persons using or about to use said crossing, and that by listening the deceased could have heard the same in time to have avoided collision with said train, or if you believe that by looking he could have seen said train in time to have avoided such collision, and he failed to do either (if you find the facts so to be), and that by reason thereof he was struck and thereby killed, and you further believe that by his failure (if any) to so look and listen he was guilty of contributory negligence, then I charge you that your verdict should be for the defendant company, even though you should find that defendant was guilty of negligence under paragraph 8 of this charge."

The criticism of this charge is that, before the jury could find the deceased guilty of contributory negligence, it required that they should first acquit the defendant of having failed to ring the bell or blow the whistle at such time and place as was reasonably calculated to warn users of the crossing of its approach, and therefore put a greater burden upon defendant than the law imposes. It seems to us that this criticism is strained. The charge may not have been without a flaw, and but few charges are. It was unnecessary perhaps to say in that connection anything about warnings given by ringing the bell or blowing the whistles, but manifestly the jury could not understand from a reading of the entire paragraph that deceased would not have been guilty of contributory negligence, however inattentive and careless he may have been, unless the signals were given; but, on the contrary, the jury was expressly instructed that if deceased failed to look or listen, and that by reason of such failure he was guilty of contributory negligence, plaintiffs could not recover even if the jury should find that the defendant company was guilty of negligence under paragraph 8 of the charge. The eighth paragraph of the charge referred to submitted the issue of negligence of defendant in failing to give warning of the approach of the train by ringing the bell or blowing the whistle, by running the train over the crossing at too great a rate of speed, and in failing to keep a flagman at the crossing; so that the effect of the charge complained of, when taken in its entirety and construed in connection with the whole charge, was to tell the jury that, even though the defendant was negligent in all these respects, plaintiffs could not recover if the deceased was guilty of contributory negligence in failing to look or listen as he approached the crossing.

[7, 8] The twenty-first assignment complains of the failure of the court to give appellant's nineteenth special charge, which is as follows:

"If you should believe that on the occasion in question the deceased could have ascertained the approach of defendant's train to said Eighth street crossing in time to have avoided contact with said train by listening for said train (if he did not), or by stopping and listening (if he did not), and that in failing to so listen (if he did fail) he failed to use that degree of care that an ordinarily prudent person would have used under the same or similar circumstances, then your verdict must be for the defendant, even if you should believe that defendant was guilty of negligence as claimed by plaintiff."

Appellant contends that this charge should have been given in order to properly submit to the jury the question of the deceased's contributory negligence, without making it imperative that the jury first acquit the defendant of negligence in having failed to sound the whistle or ring the bell. As we have before attempted to show, the effect of the court's charge was not to require the jury to acquit the defendant of negligence in such respects before they could find deceased guilty of contributory negligence. We think the special charge was a proper one to be given, however, and that it should have been given; but, in view of what we have said in regard to the ninth paragraph of the court's charge, we do not think that the failure of the court to give the special charge was such a denial of the rights of appellant as was reasonably calculated to cause, and did probably cause, the rendition of an improper judgment in the case. The assignment is overruled.

[9] The twenty-third assignment complains that the verdict is excessive. The judgment is large, and if this court had been passing upon the facts in the first instance it is not likely that a judgment for $30,000 would have been awarded. At the time of his death the deceased was a little past 24 years of age, was 6 feet tall, and weighed 165 or 170 pounds and in good health. He was well educated, normal, energetic, and a good husband. For two years' service with J. B. Baird he was paid $5,117.50, and he was held in high esteem by his employer. His aspirations were lofty, and he was ambitious and earnestly bent on making a success of life. Baird testified that as an experienced real estate salesman the deceased's services were worth $2,500 per year. The lowest estimate placed upon his earning capacity was $150 per month. In addition to compensation for the pecuniary loss sustained by plaintiffs on account of his death, his two little children, born 12 days after his death, were entitled to compensation for the loss of the nurture, care, and education their father could have given them. The amount to be awarded was necessarily left to the discretion of the jury, and that discretion does not

appear to have been abused in this case. Nor is there anything in this case to indicate that the jury in arriving at the amount of the verdict was influenced by passion, prejudice, or other improper motive. We cannot say that the verdict is manifestly too large, and the assignment is overruled.

We find no reversible error in the record, and the judgment of the court below is affirmed.

Affirmed.