ROWE v. GUDERIAN et al. (No. 6036.)

(Court of Civil Appeals of Texas. Austin. Feb. 24, 1919. On Motion for Rehearing April 9, 1919.)

1. SALES ⚖=149—BILLS OF SALE—CONSTRUCTION.

A bill of sale, which does not mention a motor sales company or any member of that firm as grantor, but specifically states that the automobile sold was the property of H., and on its face purports to be made and executed by H., who warrants the title, although bearing the names of the company and H. in the place for signatures, construed as from H., and not from the company.

2. SALES ⚖=149—BILLS OF SALE—CONSTRUCTION.

A third person, who prepared a bill of sale for an automobile, may not claim that a company whose name appears as signed thereto was a grantor, where the language of the instrument is not ambiguous, and designates the other signer as grantor.

3. ESTOPPEL ⚖=75—SALES ⚖=235(1)—CLAIM OF OWNERSHIP—BONA FIDE PURCHASER.

Where plaintiff drew a bill of sale of a car from H. to B. without reference to a company, except that its name appeared thereon above H.'s signature, and plaintiff took a mortgage upon the car from B., plaintiff may not claim that the company is estopped by the bill of sale, or that he is an innocent purchaser as against the company.

4. ESTOPPEL ⚖=75—CLAIM OF OWNERSHIP—BONA FIDE PURCHASER—RELIANCE ON TITLE.

A company owning an automobile described in a bill of sale as the property of H., and therein transferred to B. and mortgaged to plaintiff, but showing no connection of the company with the bill of sale, except its name appearing above H.'s signature, is not estopped to claim ownership on the ground that company placed H. in possession of automobile.

5. PARTNERSHIP ⚖=131—OFFICERS—POWER OF MERGER—EXECUTION OF MORTGAGE TO SECURE DEBT OF ANOTHER.

A general manager of a partnership is without authority to execute a mortgage on the property of his principal to secure a debt of a third person, where the principal is not liable for such debt, nor can he authorize another to so do.

6. APPEAL AND ERROR ⚖=1062(5)—HARMLESS ERROR—IMMATERIAL SPECIAL ISSUE.

Where the court submitted an immaterial special issue, containing nothing to cause the jury to be prejudiced against the appellant, he is not entitled to a reversal.

On Motion for Rehearing.

**7. APPEAL AND ERROR ☞2—REFUSAL OF INSTRUCTIONS—NECESSITY FOR EXCEPTION.**

Acts 35th Leg. c. 177 (Vernon's Ann. Civ. St. Supp. 1918, art. 1974), amending Rev. St. art. 1974, nullifies the amendment of 1913 (Acts 33d Leg. c. 59), which required the complaining party to take a bill of exceptions to the action of the trial court in refusing a requested instruction, so that in a case tried in February, 1918, it was the court's duty to indorse the word "refused" on refused requested instructions, or the words "Modified as follows," if modified and given; such indorsements constituting a bill of exceptions, so that appellant need save no formal bill of exceptions.

**8. PRINCIPAL AND AGENT ☞124(2)—AUTHORITY TO EXECUTE MORTGAGE—QUESTION FOR JURY.**

In an action by plaintiff, claiming under a mortgage against defendants, for conversion of the mortgaged automobile, where there was testimony tending to show that one of the defendants, claiming to be owners, authorized the mortgagor to execute the mortgage in question, it was error for the court to refuse to give requested instruction requiring the jury to find whether or not such defendant authorized the mortgagor to execute such mortgage.

Appeal from District Court, McLennan County; H. M. Richey, Judge.

Suit by John F. Rowe against C. J. Guderian and others, as partners doing business under the firm name of the Dixie Motor Sales Company. Before trial suit was dismissed as to the defendant L. P. Bain. Judgment for the defendants, and plaintiff appeals. Reversed and remanded on rehearing.

W. L. Eason, of Waco, for appellant.
Johnston & Hughes, of Waco, for appellees.

KEY, C. J. John F. Rowe instituted this suit against C. J. Guderian, E. A. Polly, and L. P. Bain, alleged to be a partnership doing business under the firm name of the Dixie Motor Sales Company. Before the trial the suit was dismissed as to Bain. The plaintiff founded his suit upon allegations to the effect that he had a valid mortgage on an automobile, executed by L. P. Bain, which automobile he alleged had been converted by the defendants to their own use. In their answer the defendants interposed numerous exceptions to the plaintiff's petition, and set up a general denial. The plaintiff filed a supplemental petition, elaborating and enlarging the pleas contained in his original petition. We copy the following statement from appellant's brief:

"Bain, with whom plaintiff was associated as a silent partner, was conducting an installment jewelry business. This business was conducted from plaintiff's office, and the assets of the partnership were under the control of the plaintiff. The plaintiff had advanced money to the partnership, which had not been repaid to him. The plaintiff and Bain desired to dissolve partnership, and Bain desired to acquire the partnership assets. Plaintiff agreed that for a consideration of $700 he would sell to Bain his interest in all of the partnership assets, and release his partnership lien on the partnership assets, and deliver all of the assets to Bain. Bain was unable to pay the $700. Bain reported to plaintiff that he had procured an automobile from the Dixie Motor Sales Company, and would execute to plaintiff a note for $700 and a mortgage on the automobile. Before accepting the note and mortgage, the plaintiff conferred with Haddick, who plaintiff knew was the general agent of the Dixie Motor Sales Company, and Haddick informed plaintiff that the automobile was the property of Bain, and that Bain had authority to execute the mortgage. The automobile was delivered by the Dixie Motor Sales Company to Bain, and he used same in the city of Waco and elsewhere, but when not in use he generally kept it in the storeroom of the Dixie Motor Sales Company, Bain's place of employment. At that time Bain was conducting the jewelry business and maintained his office with the Dixie Motor Sales Company, and he was also selling automobiles on a commission for the Dixie Motor Sales Company. The note and mortgage in suit were executed by Bain and delivered to the plaintiff, but before plaintiff had the mortgage recorded or before he would consummate the deal, he required Bain to procure a bill of sale to the automobile. Bain did procure the bill of sale and did deliver same to plaintiff, and the transaction between Bain and plaintiff was then consummated. The chattel mortgage was placed of record, and Bain removed from plaintiff's office all of the partnership assets and carried them with him to his new location, the Dixie Motor Sales Company. * * * The mortgaged automobile was sold to Newberry for $750, and the check was made payable to Bain, and was delivered by Newberry to Bain, and Bain, in turn, indorsed and delivered the check to Guderian, and Guderian deposited it in the bank to the credit of the Dixie Motor Sales Company. This is not disputed. It is plaintiff's contention that the automobile was sold by Bain and the defendants to Newberry and thereby converted by them, and also that the proceeds of the sale, the $750 check, was converted and appropriated by the defendants."

The case was submitted to a jury by the court's main charge upon the following special issues, and the jury answered them as indicated:

"Question No. 1: Did the defendant Guderian expressly authorize J. C. Haddick to deliver the car in question to L. P. Bain before the said L. P. Bain and J. C. Haddick should execute their notes to him in payment thereof?" To which the jury answered, "No."

"Question No. 2: Did the defendant Guderian authorize L. P. Bain to sell the automobile in issue herein to one Newberry?" To which the jury answered, "No."

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"Question No. 3: Was the particular car upon which the mortgage was given to plaintiff herein at the time and after the said mortgage was executed, one of the stock cars exposed for daily sale at the place of business of defendant?" To which the jury answered, "Yes."

"Question No. 4: Did the defendant Guderian at the time L. P. Bain·delivered the $750 check to him tell the said Bain that he would satisfy or make satisfactory arrangements with the plaintiff Rowe herein for the debt that the said Bain owed plaintiff?" To which the jury answered, "No."

"Question No. 5: What was the reasonable market value of the automobile in issue at the time and place of its sale to J. T. Newberry?" To which the jury answered, "$750."

At the request of the plaintiff, the court submitted to the jury the following questions, which were answered as indicated:

"Question No. 1: At the time the bill of sale was executed, was J. C. Haddick the duly authorized agent and general manager of the Dixie Motor Sales Company?" To which the jury answered, "No."

"Question No. 2: At the time Haddick executed the bill of sale to Bain, was he acting within the scope of his authority?" To which the jury answered, "No."

"Question No. 3: At the time Haddick executed the bill of sale to Bain, was he acting within the apparent scope of his authority?" To which the jury answered, "No."

"Question No. 7: After execution of the mortgage and bill of sale, did Guderian, after having information thereof, ratify and confirm such transaction?" To which the jury answered, "No."

Also, at the request of the defendants, the following issues were submitted to and answered by the jury:

"Special Issue No. 6: Was the automobile which Bain wanted to buy from Guderian or the Dixie Motor Sales Company ever delivered to Bain by Guderian or the Dixie Motor Sales Company before Bain gave the bill of sale, with chattel mortgage provision, dated February 15, 1917, to John F. Rowe?" To which the jury answered, "No."

"Special Issue No. 12: Did John F. Rowe have notice that Bain and Haddick were looking to Guderian personally for authority for Bain to buy the car?" To which the jury answered, "Yes."

"Special Issue No. 13: Before accepting from Bain the chattel mortgage dated February 15, 1917, did plaintiff Rowe make reasonable effort to learn whether Guderian had given his authority for the purchase of the car by Bain?" To which the jury answered, "No."

"Special Issue No. 19: Did L. P. Bain sell the automobile in issue to J. T. Newberry as his (Bain's) own property?" To which the jury answered, "No."

The trial court rendered judgment against the plaintiff and in favor of the defendants, and the former has appealed.

The bill of sale referred to reads as follows:

"The State of Texas, County of McLennan.

"Know all men by these presents that I, J. C. Haddick, of Waco, McLennan county, Texas, am the owner of a certain Dixie roadster automobile, which is new and which is now in our automobile showrooms, at 620 Franklin street, Waco, Texas.

"Which said Dixie roadster automobile, I have this day for a valuable consideration sold, transferred and delivered to L. P. Bain, the title to same I forever warrant and defend unto the said L. P. Bain, there being no incumbrance whatsoever against the said automobile.

"Witness my hand at Waco, McLennan county, Texas, on this the 21st day of February, A. D. 1917.      Dixie Motor Sales Co.
"J. C. Haddick."

Opinion.

[1-3] The first assignment of error complains of the action of the trial court in refusing to give a requested instruction directing a verdict for the plaintiff for $750. While appellant has submitted 11 separate propositions under that assignment, when reduced to final analysis, his contention is that the undisputed proof shows that J. C. Haddick, as general manager of the Dixie Motor Sales Company, had both real and apparent authority to sell the automobile in question to Bain; that as such agent he made such sale before Bain executed the mortage in question, and therefore, as the undisputed testimony showed that Bain, thereafter acting as agent for the Dixie Motor Sales Company, sold the car and delivered to Mr. Guderian the proceeds received therefor, which the latter placed to the credit of the Dixie Motor Sales Company, and inasmuch as appellant's debt amounted to more than $750, which was the value of the car and the sum for which it was sold, the court should have directed a verdict for appellant.

The undisputed proof does not show that the car was sold to Bain by the Dixie Motor Sales Company, unless it be that the bill of sale heretofore referred to had the effect of divesting title out of that company and vesting it in Bain; and we have reached the conclusion that such is not a correct construction of that instrument. It will be noted that neither the Dixie Motor Sales Company nor any member of that firm is mentioned as the grantor in that instrument. On the contrary, the document specifically states that the automobile referred to was at that time the property of J. C. Haddick, and that designates him as the vendor. The instrument purports upon its face to be made and executed by J. C. Haddick, and not only describes the automobile as being owned by him, but specifically designates him and no one else as the vendor or seller, and he alone warrants the title. True it is, that the "Dixie Motor Sales Co." is signed at the bottom of the instrument as well as the name, "J. C. Haddick," but that fact does not justify

a construction which would vary the unambiguous language of the instrument, and bind the Dixie Motor Sales Company as the vendor or seller of the automobile, though it be conceded that J. C. Haddick had the power, as general manager of the company, to sell the automobile in question, and to execute a bill of sale in the name of the company by him as agent. The undisputed proof shows that appellant himself wrote the bill of sale, and therefore he is not entitled to claim that the name of the Dixie Motor Sales Company signed at the bottom of it renders it ambiguous, and that it should be given a construction favorable to the grantee. The rule referred to should have no application, when it is made to appear that the grantee himself has prepared the instrument which is being construed. Hence we conclude that no error was committed in refusing to direct a verdict for the plaintiff, and the assignment under consideration is overruled.

[4] The second assignment of error involves the same question which has just been decided against appellant; and the further question that appellees are estopped because of the fact that their agent and manager executed the bill of sale, and allowed Bain to use it for the purpose of obtaining possession of a stock of jewelry and removing it to appellant's place of business.

As appellant himself wrote the bill of sale, and as it did not purport to, and in fact did not, convey any title from the Dixie Motor Sales Company, nor either of the appellees, but stated on its face that the automobile referred to belonged to J. C. Haddick, and as neither of the appellees did anything to lead him to believe that it was a bill of sale from any one other than J. C. Haddick, he is not in a position to claim estoppel or innocent purchaser as against appellees. Furthermore, the mortgage was taken for an existing debt, and it created a lien upon the stock of jewelry, the possession of which appellant claims that he surrendered to Bain, upon faith of the mortgage; the instrument further stipulated that title to the property conveyed should remain in appellant until all the indebtedness was paid, and that appellant should have full power to take possession of the same at any time he deemed himself insecure, and sell it at public or private sale, and that the property should not be removed out of the county without his written consent. The facts referred to do not place appellant in the category of an innocent purchaser, nor show that appellees were estopped from claiming the automobile in question.

The third assignment complains because the court refused to give a requested instruction, requiring the jury to find whether or not appellant, Guderian, authorized Bain to execute the mortgage in question.

The record does not show that appellant excepted to the action of the court in refusing to give the requested instruction referred to; and therefore, under the statute regulating such procedure, he must be deemed to have acquiesced in the action of the trial court, and is not entitled to have such action reviewed by this court.

[5] The fourth assignment complains of the action of the trial court in refusing to submit at appellant's request, this question to the jury:

"Did J. C. Haddick, as manager of the Dixie Motor Sales Company, authorize Bain to execute the mortgage to plaintiff?"

Appellant excepted to the action of the court in refusing to submit that question, but we hold that the ruling of the trial court was correct. A general manager has no authority to execute a mortgage on the property of his principal to secure a debt of a third person, where the principal is in no wise liable for such debt; and having no power to do so himself, of course he lacks authority to authorize some one else to do that which he himself is not authorized to do.

[6] The fifth and sixth assignments relate to the question of estoppel, which has been already considered and decided against appellant, and therefore those assignments are overruled.

The seventh and last assignment complains of the action of the trial court in submitting question No. 3 to the jury.

We are disposed to agree with appellant's contention that the question referred to and the answer of the jury thereto were both immaterial; but that is no reason why the judgment should be reversed, if the answers to other questions will support the judgment. The question referred to being immaterial, and there being nothing in it to cause the jury to be prejudiced against appellant, he is not entitled to have the case reversed merely because that question was submitted to the jury.

No reversible error has been pointed out, and therefore the judgment will stand affirmed.

Affirmed.

## On Motion for Rehearing.

[7] As shown by our original opinion, we declined to pass upon the third assignment of error, which complained of the action of the trial court in refusing to give an instruction requested by appellant, requiring the jury to find whether or not appellee Guderian authorized Bain to execute the mortgage in question. While the record shows that the requested instruction referred to was marked "Refused" by the trial judge, it does not affirmatively show that appellant excepted to the act of the judge in refusing to give that instruction, and therefore we held that,

under the law passed by the Legislature in 1913, the failure of appellant to reserve a bill of exception to that ruling denied him the right to have that action of the trial court reviewed by this court.

It is not denied that such is the proper construction of the act of 1913 (Acts 33d Leg. c. 59), but the motion for rehearing calls our attention to the fact that the law regulating such matters was again amended by an act approved April 2, 1917 (Acts 35th Leg. c. 177 [Vernon's Ann. Civ. St. Supp. 1918, art. 1974]), and which act was in force when this case was tried in February, 1918. That act amends article 1974 of the Revised Statutes so as to make it read as follows:

"When a special instruction is requested and the provisions of this law have been complied with and the trial judge refuses the same, he shall indorse thereon, 'Refused,' and sign the same officially, and such charge, when so indorsed, shall constitute a bill of exceptions and it shall be conclusively presumed on appeal that the party asking said charge presented the same at the proper time and excepted to its refusal, and that all of the requirements of law have been observed, and the same shall entitle the party requesting such charge to have the action of the trial judge in refusing the same reviewed on appeal without preparing a formal bill of exceptions.

"If the trial judge modify such special charge, he shall indorse on said charge, 'Modified as follows (stating in what particular he has modified the charge) and given, and exception allowed plaintiff (or defendant, as the case may be),' and·sign the same officially. Such charge when so indorsed shall constitute a bill of exceptions and it shall be conclusively presumed that the party asking said charge presented the same at the proper time, excepted to the modification thereof, and that all of the requirements of law have been observed, and the same shall entitle the party requesting such charge to have the action of the trial judge in modifying the same reviewed without preparing a formal bill of exceptions."

That article, as it now reads, nullifies the amendment of 1913, which required the complaining party to take a bill of exception to the action of the trial court in refusing a requested instruction, and declared that the failure to do so should be construed as approving and acquiescing in such refusal.

[8] From this it follows that this court fell into error in not considering the third assignment. As above stated, that assignment complains of the action of the trial judge in refusing to give a requested instruction requiring the jury to find whether or not the defendant Guderian authorized Bain to execute the mortgage which Bain had given upon the automobile in question, and after careful consideration of that question we have reached the conclusion that the requested instruction should have been given, and

that the third assignment of error must be sustained, and the case reversed.

Without setting·out the testimony in full, we content ourselves with the statement that there was testimony tending to show that the defendant Guderian authorized Bain to execute the mortgage in question; and, if he did so, appellant was entitled to recover against appellee Guderian, because the undisputed testimony shows that he received from Bain and appropriated to his own use the money for which the automobile was sold.

Hence the motion for rehearing will be granted, and the judgment appealed from will be reversed, and the cause remanded.

Motion granted.

Judgment reversed and cause remanded.