**BAKER v. STREATER. (No. 6185.)**

(Court of Civil Appeals of Texas. Austin.
April 7, 1920. Rehearing Denied
May 12, 1920.)

**1. Appeal and error ⬅917(2)—Record being silent as to presentation, demurrer deemed waived.**

Where the record on appeal is silent as to whether a demurrer was presented or acted upon, it will be deemed to have been waived.

**2. Damages ⬅171—Evidence as to plaintiff's financial standing held not prejudicial to defendant.**

In an action for personal injuries sustained by plaintiff by being struck by defendant's railroad train at a crossing, admission of evidence as to property owned by plaintiff, consisting of land and live stock, *held* not erroneous as calculated to prejudice the jury against defendant, and as showing that plaintiff was a man of wealth, and that it would require a large sum to compensate him.

**3. Damages ⬅173(2)—Plaintiff's financial condition held admissible to show damages.**

In an action for personal injuries sustained by plaintiff, struck by defendant's railroad train at a railroad crossing, evidence as to property owned by plaintiff, consisting of live stock and land, was admissible to show the extent and character of plaintiff's business and the pecuniary loss resulting from the injuries which prevented his looking after and attending to his property and affairs.

**4. Railroads ⬅350(5)—Negligence in failing to station flagman at crossing where view obstructed by freight train held for jury.**

In an action for personal injuries sustained by plaintiff through being struck by defendant's railroad train at a crossing in a town, it appearing that a freight train on a side track had been cut at the crossing, and that the view of the approaching passenger train was thereby obscured, evidence *held* insufficient to warrant submission to the jury of the issue as to whether defendant should have stationed a flagman at the crossing.

**5. Appeal and error ⬅1062(1)—Error in submitting railroad's failure to station flagman held harmless, where judgment supported on another ground.**

In action for personal injuries sustained by plaintiff struck by defendant's passenger train while crossing the track in an automobile driven by another, error, if any, in submitting defendant's failure to station flagman at the crossing *held* harmless, where the judgment for plaintiff could be referred to another ground of negligence, consisting of defendant's violation of the speed ordinances.

**6. Trial ⬅194(17)—Instruction as to contributory negligence imputable to plaintiff held on weight of evidence.**

In an action for injuries sustained by plaintiff, struck by defendant's railroad train at a crossing while riding in an automobile driven by another, an instruction that the failure of another passenger in the automobile to observe the approaching train was contributory negligence imputable to plaintiff *held* properly refused as being on the weight of the evidence.

**7. Trial ⬅252(9)—Instruction as to duty of plaintiff's copassenger to stop car held properly refused.**

In an action for injuries sustained by plaintiff, struck by defendant's railroad train at a crossing while riding in an automobile driven by another, an instruction that the failure of another passenger in the automobile to observe the approaching train was contributory negligence imputable to plaintiff *held* properly refused, as being erroneous in placing upon such other passenger the duty of stopping the car, when it was not shown that he had any control thereof.

**8. Trial ⬅252(9)—Instruction as to contributory negligence of plaintiff's copassenger held properly refused, where joint enterprise not shown.**

In an action for personal injuries sustained by plaintiff struck by defendant's railroad train at a crossing while riding in an automobile driven by another, an instruction that the failure of another passenger in the automobile to observe the approaching train was contributory negligence imputable to plaintiff *held* properly refused as not based upon evidence sufficient to raise the issue of joint enterprise.

**9. Railroads ⬅327(11)—Speed statute held not to apply to passenger having no control over driver of motor vehicle.**

Vernon's Ann. Pen. Code Supp. 1918, art. 820*l*, relating to the speed of motor vehicles when crossing railroad tracks, does not apply to one merely riding in an automobile as a guest or companion, but having no control over the driver, and it would apply to such a one only when the driver's negligence should be imputable to him.

**10. Appeal and error ⬅1068(5)—Refusal of instruction as to violation of speed ordinance by plaintiff held not erroneous, in view of findings.**

In an action for personal injuries sustained by plaintiff, struck by defendant's railroad train at a crossing while riding in an automobile driven by another, where there were special findings that plaintiff exercised ordinary care for his own safety, and was not engaged in a joint enterprise with the driver, refusal to submit the question of whether the automobile was slowed down to a speed not greater than six miles an hour within 30 feet of the crossing, as required by Vernon's Ann. Pen. Code Supp. 1918, art. 820*l*, *held* not reversible error; the findings of the jury being conclusive.

**11. Damages ⬅132(2)—$8,000 held not excessive for broken leg, where injury might be permanent.**

$8,000 *held* not excessive where plaintiff, 34 years old, struck by defendant's railroad train, sustained a fracture of the leg and suffered considerable pain, his earning capacity was decreased to the extent of over $5,000, and the injury might be permanent.

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appeal from District Court, Robertson County; John Watson, Judge.

Action by W. C. Streater against James A. Baker, as receiver of the International & Great Northern Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

F. L. Henderson, of Bryan, and J. L. Goodman and H. A. Bush, both of Franklin, for appellant.

Perry & Woods, of Franklin, for appellee.

### Findings of Fact.

BRADY, J. Appellee sued appellant for damages for personal injuries, alleged to have been caused by the negligence of the operatives of a train of appellant. He alleged several grounds of negligence, two of which were submitted to the jury: (a) The failure of appellant to have a flagman or other employé at the crossing where the collision occurred, to warn persons, about to use the crossing, of the approach of a fast passenger train, known as the "Sunshine Special"; (b) the operation and running of the train at a rate of speed approximately 25 miles an hour in violation of the penal ordinances of the town of Franklin, which limited the rate of speed of any railroad train within the corporate limits to 10 miles an hour.

The case was submitted upon special issues, and the jury found that the passenger train was running at a greater rate of speed than 10 miles per hour at the time of the collision, and that this was a proximate cause of the injuries. The jury also found that appellant negligently failed to have a flagman or other employé stationed at the crossing, which was also a proximate cause of the injuries. The verdict of the jury fixed the damages of appellee at $8,000.

The court also submitted the issues of alleged contributory negligence on the part of appellee, intoxication at the time of the collision, and whether appellee and A. J. Hodges, who was driving the car at the time, were engaged in a joint enterprise. Each of these issues was answered in the negative.

The court defined contributory negligence, and specially submitted this issue in special charges requested by appellant.

At the request of appellant, the court also charged the jury that in passing on the question of damages they should not consider any element of damages except as the same was submitted by the court; that although the jury should believe from the evidence that the crossing was obstructed, the fact in itself would not justify or excuse the appellee from using ordinary care for his own safety; that in passing upon the damages the jury should determine, first, whether his damages were proximately caused or resulted from any negligence of appellant, and that

in so doing the jury should determine whether acts or omissions on his part had further incapacitated him or prolonged the time of his recovery.

The court also, at appellant's request, asked the jury whether appellee was driving upon the street and approaching the crossing at a greater rate of speed than 8 miles an hour, and, if so, whether this was the proximate cause of his injuries. The answer was in the negative.

Finally, at request of appellant, this charge was given: That the duty of the public and the railroad company are reciprocal, as to the rights of each, by public necessity and convenience, and one approaching a railroad crossing must exercise proper precaution to avoid injury from passing trains; and, bearing in mind this instruction, the jury were asked the following question:

"Did the plaintiff upon approaching this crossing exercise that degree of care that an ordinarily prudent person would do in order to avoid injury from passing trains?"

The answer was in the affirmative.

Upon the verdict, judgment was rendered for appellee for the sum of $8,000, from which this appeal has resulted.

The material facts upon the issues involved are substantially as follows: At the time of the collision, appellee was a farmer and stockman, owning some 1,400 acres of land, 350 or 400 head of hogs, and some horses and mules. His time was occupied in looking after his cattle, buying and selling hogs and cattle, and looking after his farm, which comprised about 500 acres of land under cultivation. The accident occurred at the principal crossing in the town of Franklin, which had a population of about 1,500 inhabitants; and approximately one-third of the residence section of the town is located south of the railroad, from which direction the automobile in which appellee was riding approached appellant's tracks. There was also a large trade territory south of the crossing, and this crossing was used by the population of the town living on the south side, and by the people of the adjacent communities.

There was no evidence of any unusual noises in the neighborhood of the crossing, except that at the time of the accident the engine of the local train was spotting some cars on the house track; but the evidence shows that at the time of the accident a freight train of solid box cars had been cut at the crossing, which extended eastward into the crossing; and there were also cars left standing on the west side of the crossing. The width of the crossing was about 60 feet, but by reason of the placing of the box cars on either side, the space left by the cut in the freight train reduced the crossing to about 16 or 18 feet in width. These box cars were at or near the station, and the passenger

train approached from the east. The evidence showed that the box cars and station obstructed the view of the approaching passenger train, which was not seen by appellee or the other occupants of the car until they had passed the box cars, and the train was then within 30 feet from them, running at a rate of speed from 20 to 35 miles an hour. The engineer and fireman, who were keeping a lookout, did not see the automobile until about the time it was hit. It had come out from behind the box cars before being seen by these operatives.

The conductor of the freight train testified that his train arrived in Franklin about 5:20 and the Sunshine Special at 5:35. He knew at the time and before the accident that the passenger train was expected to arrive, and took the passing track for the purpose of letting it pass. He knew that the train was due, but did not place anybody at the crossing to give warning to anybody who might cross there. He testified that they did not ordinarily do that under such circumstances, but that sometimes they did and sometimes not; that he knew this was what was called the main street crossing, and that the main line was located about 6 feet, from rail to rail, from the passing track on which the freight cars were standing.

The automobile belonged to Mr. Hodges, who was a neighbor of appellee, and who had agreed to carry the latter to Hearne the day of the accident. In the car was also a Mr. Sparks, when Hodges called for appellee at his place. The party stopped at New Baden, where Sparks and Hodges had some peanut business. Hodges and appellee went to Hearne to carry a coat back to some one, but had no other business there. On the trip these parties all had some drinks together, both beer and whisky. On the way from Hearne to Franklin they took a drink, and when they arrived at Franklin they went to a lumber office. Appellee and Sparks stopped at the lumber yard and bought some lumber, but each for his separate account. Hodges also figured with a man at the lumber yard for some lumber. When the parties left home, Sparks did not intend to go to Hearne, but accompanied the others at their request.

Upon the issue of appellee's having prolonged his injuries by failing to obey the instructions of his physicians, the evidence for appellee is to the effect that he did not disobey the instructions of the physicians who treated him. There is no positive evidence that he did disobey or fail to carry out the advice or instructions of his physicians, thus prolonging his injuries. There is some testimony that appellee was advised to use his leg more, and to massage it to further quick recovery, and showing the effect of inaction upon a broken leg. The accident occurred in November, 1917, and there was testimony that appellee was still using his crutches

221 S.W.—66

late in the summer of 1918, and this was claimed to retard his recovery.

Upon the question of the amount of damages, there was evidence to the effect: That both the tibia and fibula of appellee's leg were broken about 17 months before the trial. That for a short time after the accident he was rendered unconscious; was carried to the hospital on the following day, where his leg was set, placed in a fracture box, and kept in a fixed position with a 12-pound weight swinging to it continuously for 14 days, during which time appellee suffered constant pain. He remained in the hospital 24 days, and carried crutches for about 8 months after the injury, and at the time of the trial he still suffered pain. That after considerable use of his leg there would be inflammation and severe pain. That there had never been a perfect union of the broken bones, and that the injury might be permanent and incurable by surgical operation. Appellee was but 34 years old at the time of the accident, in good health and able to work at his usual occupation. His life expectancy at the time of the trial was nearly 32 years. There was evidence showing that his decreased earning capacity and loss of time to the date of the trial amounted alone to over $5,-000. The testimony was conflicting as to whether the injuries were serious and permanent at the time of the trial, and as to whether an operation would cure.

### Opinion.

[1] The first assignment will not be considered, because the record does not show any action by the trial court upon the special exception involved in such assignment. The record being silent as to whether the demurrer was presented or acted upon, it will be deemed to have been waived. Chambers v. Miller, 9 Tex. 236; Logan v. Martinez, 211 S. W. 624; Texas Auto Supply Co. v. Magnolia Petroleum Co., 211 S. W. 629.

[2] The next assignment presents the point that the trial court erred in admitting, over appellant's objection, the evidence of appellee as to the property owned by him, consisting of land and live stock, because it was an attempt to show the financial condition of appellee, and had no proper bearing upon the amount of damage sustained. Specifically it is claimed that this evidence was calculated to prejudice the jury against appellant, because it indicates that appellee was a man of wealth, and that it would require a large sum to compensate him. To say the least, the claim is novel. The point is usually presented upon a showing of the poverty of a plaintiff, to enlist the sympathy of the jury. It is too much of a tax upon our credulity to believe that the jury was influenced or calculated to be influenced, to the prejudice of appellant, by the admission of this evidence.

[3] Moreover, we think the testimony was admissible. It was not a mere attempt to show the financial condition of appellee, but rather the character and extent of his business, and bore directly upon his pecuniary loss resulting from the injuries, which prevented his looking after and attending to his property and affairs. The rule is well stated in 17 Corpus Juris, page 895, as follows:

"Where plaintiff's earnings are not measured by a fixed wage, it is proper to show the business in which he was engaged, and the extent and amount of the ordinary business."

To the same effect is 8 Amr. Eng. Ency. of Law, p. 650. We also cite City of Dallas v. Muncton, 37 Tex. Civ. App. 112, 83 S. W. 431; El Paso Elec. Ry. Co. v. Murphy, 49 Tex. Civ. App. 586, 109 S. W. 489.

For the reasons indicated, the second assignment is overruled.

The next question presented is the objection to the court's charge, in submitting to the jury the issue of the alleged negligence of appellant in failing to station a flagman or other employé at the crossing at the time of the accident. It is urged that there was neither pleading nor evidence sufficient to lay a predicate for this issue. As we have stated, the record does not show that the special exception upon this point was presented or acted upon by the trial court. The petition was certainly sufficient as against a general demurrer.

[4] As to the evidence upon this issue, it has been set out in the findings of fact, and we think it sufficient to take the case to the jury. It might be conceded that there was not sufficient evidence to raise the question of the duty of appellant to maintain a regular or permanent flagman at this crossing, but we think there was evidence enough to present the issue as to negligence in failing to place a flagman or other employé at the crossing at the particular time, under the circumstances of this case. This duty may exist independently of statute, and it is ordinarily a question for the jury, dependent upon the circumstances of the particular case, as to whether or not ordinary care would require a railroad company to station a flagman or other employé at the crossing. In our opinion, the situation of this crossing at the time made it a question for the jury to say whether the duty existed, and whether the failure constituted negligence. 8 Amr. Eng. Ency. of Law, 391 and 392; 33 Cyc. 943–946; Railway Co. v. Magee, 92 Tex. 619, 50 S. W. 1013; T. & N. O. R. Co. v. Cunningham, 168 S. W. 431; M., K. & T. R. Co. v. Bratcher, 54 Tex. Civ. App. 10, 118 S. W. 1091; M., K. & T. Ry. Co. v. Rogers, 91 Tex. 52, 40 S. W. 956; M., K. & T. R. Co. v. Hurdle, 142 S. W. 992; I. & G. N. Ry. v. Jones, 60 S. W. 978; G., H. & S. A. Ry. v. Linney, 163 S. W. 1035;

So. Pac. v. Walker, 171 S. W. 265; Railway Co. v. Gibson, 83 S. W. 864.

[5] There is a further answer to the assignments raising this question. The jury found that appellant was guilty of negligence per se in permitting the passenger train to be run at a greater rate of speed than 10 miles an hour, in violation of the city ordinance, and that this was a proximate cause of appellee's injuries. There is ample evidence to support this conclusion and the judgment rendered by the court. This being a ground of negligence upon which the recovery could be based, if there was any error in submitting the issue of failure to station a flagman or other employé, it was rendered harmless, because there was another ground of negligence to which the judgment could be referred. Krenz v. Strohmeir, 177 S. W. 178; Railway Co. v. Roberts, 201 S. W. 674; O'Farrell v. O'Farrell, 56 Tex. Civ. App. 51, 119 S. W. 899; Smith v. Smith, 213 S. W. 273; Rowe v. Guderian, 212 S. W. 960; Tex. Elec. Ry. v. Williams, 213 S. W. 730; Corpus Juris, vol. 4, p. 1028.

The assignments just discussed will be overruled.

Although not in the order found in the briefs, we will next discuss briefly the question of the refusal of the trial court to submit the issue of joint enterprise as to appellant and Mr. Sparks, who was one of the occupants of the automobile at the time of the accident. The court submitted this issue as to appellee and Mr. Hodges, who was driving the car, but refused a charge requested by appellant upon this issue as to Mr. Sparks and appellee. This charge was as follows:

"I charge you that, where two or more parties are engaged in a joint undertaking and are traveling together in pursuit of this undertaking, any negligence on the part of one can be imputed to all, hence, if you believe from the evidence that the driver of the car or Sparks saw the train approaching in time to have stopped, or could have by the exercise of ordinary care, and failed to do so, same would constitute contributory negligence on his part, and it would be imputed to the plaintiff herein, and you will be governed accordingly in your finding."

[6-8] We agree with appellee that the requested charge was clearly upon the weight of the evidence, and for this reason alone should have been refused. It was also erroneous in placing upon Sparks the duty of stopping the car, when it was not shown that he had any control of it. We are also of the opinion that there was not sufficient evidence to raise the issue of joint enterprise in so far as Sparks was concerned. Under the facts, it may well be doubted whether the evidence really raised the issue of joint enterprise as between Hodges and appellee, but we express no opinion upon that point, because it was submitted by the court. We have no doubt

that there was no more than a mere scintilla of evidence to show that appellee and Sparks were engaged in a joint enterprise, such as would authorize a jury to impute the negligence of Sparks to appellee. For the reasons indicated, the assignments upon this point will be overruled.

Appellant complains of the refusal of the trial court to give its special charge, in effect submitting the question whether the automobile in which the plaintiff was riding was slowed down to a speed not greater than 6 miles per hour within 30 feet of the crossing; and, if not, was such failure the proximate cause of his injuries?

[9, 10] The contention is evidently based upon the statute, article 820*l*, Vernon's Penal Code. Under the facts of this case, it is doubtful whether the statute could be made to apply at all. However, a sufficient answer is to say that this statute does not apply to one merely riding in a motor vehicle as a guest or companion, but having no control over the driver. It would apply to one merely riding in the vehicle only when the negligence of the driver should be imputed to him. The questions of appellee's having exercised ordinary care for his own safely in approaching the crossing, and of his having been engaged in a joint enterprise with the driver of the vehicle were both submitted to the jury, with proper explanatory instructions, and if the statute has any application at all to this case, it would seem that the findings of the jury are conclusive, and there was no reversible error in refusing to give the requested charge. State v. I. & G. N. R. Co., 107 Tex. 349, 179 S. W. 868; G., C. & S. F. Ry. v. Dwyer, 84 Tex. 194, 19 S. W. 470; Tex. Elec. Ry. v. Crump, 212 S. W. 827; Schaff v. Bearden, 211 S. W. 503.

[11] The verdict and judgment are attacked as being excessive. The evidence bearing upon this question has been sufficiently stated in the findings of fact. We have considered the amount awarded by the jury in the light of all the evidence, and are unable to say that it is too large. There is nothing to indicate passion, prejudice, or other improper motive or influence on the part of the jury in reaching the verdict, or in fixing the damages. Therefore, the verdict will not be disturbed. G., H. & S. A. Ry. v. Hansen, 58 Tex. Civ. App. 584, 125 S. W. 63; T. & P. Ry. v. Williams, 196 S. W. 230; K. C., M. & O. Ry. v. Durrett, 187 S. W. 427; Batson-Milholme Co. v. Faulk, 209 S. W. 837; G., H. & S. A. Ry. v. Butts, 209 S. W. 419; G., H. & S. A. Ry. v. Still, 45 Tex. Civ. App. 169, 100 S. W. 176; Witte v. G., C. & S. F. Ry. (Sup.) 6 S. W. 618; Cent. R. Co. v. Fisher, 18 Tex. Civ. App. 78, 43 S. W. 584; 4 Corpus Juris, p. 869 et seq.; G., C. & S. F. Ry. v. Harriett, 80 Tex. 73, 15 S. W. 556.

There are other assignments in the brief, which we do not deem necessary to discuss, as they relate to questions quite common in negligence cases. They have all been carefully considered, are believed to be without merit, and are therefore each overruled.

No reversible error having been shown, the judgment is affirmed.

Affirmed.

---

⊝For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes